Frances Aline JONES, and Jessee Marquez, a minor, by and through his Legal Guardian, Jack P. Trezise, Applicants,

v.

Dorothy LORENZEN, Court Clerk of Canadian County, Respondent.

No. 41685.

Supreme Court of Oklahoma.

Nov. 23, 1965.

Rehearing Denied Dec. 14, 1965.

Second Rehearing Denied March 8, 1966.

Jack P. Trezise, Midwest City, for petitioners.

Bernard S. Cohen, and Philip J. Hirschkop, Alexandria, Va., for amicus curiae, American Civil Liberties Union.

John Whelan, Jr., County Atty., Canadian County, El Reno, for respondent.

JACKSON, Vice Chief Justice.

The question for decision is whether this Court should overrule Blake v. Sessions, 94 Okl. 59, 220 P. 876, and hold 43 O.S. 1961, §§ 12, 13, 14, and 15, unconstitutional as in violation of the First and Fourteenth Amendments to the Constitution of the United States.

Applicant, or petitioner, Frances Aline Jones, alleges that she is a female, single person of the Negro race, twenty-two years of age and of the Baptist faith. Petitioner, Jesse Marquez, alleges by and through his guardian, that he is a male, single person of Mexican descent, twenty years of age and of the Catholic faith. Petitioners further allege that they have resided together for a number of years and have three children.

Petitioners allege that they live in El Reno, Canadian county, Oklahoma, and that the respondent, Dorothy Lorenzen, Court Clerk of Canadian County, Oklahoma, has refused and still refuses to issue

a marriage license for the sole reason that "mixed marriages" are forbidden by the statutes of this state. Petitioners pray that this Court assume original jurisdiction and issue its Writ of Mandamus compelling respondent to issue a marriage license.

Respondent has filed her answer and admits that petitioners are entitled in all respects to be issued a marriage license, except for the statutory provisions hereinafter noted, and prays that the application for Writ of Mandamus be denied.

Since the facts are undisputed no useful purpose could be accomplished by requiring petitioners to first file their action in the trial court and subsequently present the question to this Court on appeal.

■ Furthermore, since petitioners have already been delayed in receiving an answer to the question (See Jones v. Shaw, Okl., 441 P.2d 990) we have concluded to assume original jurisdiction. Art. 7, Sec. 2, Oklahoma Constitution.

43 O.S.1961, §§ 12 and 13, provide:

"12. Miscegenation prohibited.— The marriage of any person of African descent, as defined by the Constitution of this State, to any person not of African descent, or the marriage of any person not of African descent to any person of African descent, shall be unlawful and is hereby prohibited within this State.

"13. Penalty for miscegenation.— Any person who shall marry in violation of the preceding section, shall be deemed guilty of felony, and upon conviction thereof shall be fined in any sum not exceeding five hundred dollars, and imprisonment in the penitentiary not less than one nor more than five years."

Sections 14 and 15, of Title 43 provide penalties for the performance of marriage ceremonies and the issuance of marriage licenses contrary to the statutes.

Art. 23, Sec. 11, Oklahoma Constitution provides:

"Wherever in this Constitution and laws of this State, the word or words, "colored" or "colored race," "negro" or "negro race," are used, the same shall be construed to mean or apply to all persons of African descent. The term "white race" shall include all other persons."

In the third paragraph of the syllabus in Blake v. Sessions, supra, 94 Okl. 59, 220 P. 876, it was held:

"A state, in the exercise of its sovereign power, has the right to impose upon its citizens an incapacity to contract marriage by means of a positive policy of the state for the * * * good order of society * * * and this law applies to marriages between all citizens alike since statehood was proclaimed, notwithstanding reservations in the Enabling Act, Constitution, or Amendments to the federal Constitution."

Other Oklahoma decisions construing the effect of 43 O.S.1961, § 12, supra, are Scott v. Epperson, 141 Okl. 41, 284 P. 19; Baker v. Carter, 180 Okl. 71, 68 P.2d 85; and Long v. Brown, 186 Okl. 407, 98 P. 2d 28.

In Stevens v. United States (1944), 10th Circuit, 146 F.2d 120, 123, it was held in an appeal from the District Court of the United States for the Eastern District of Oklahoma, as follows:

" * * * And within the range of permissible adoption of policies deemed to be promotive of the welfare of society as well as the individual members thereof, a state is empowered to forbid marriages between persons of African descent and persons of other races or descents. Such a statute does not contravene the Fourteenth Amendment." (Citing numerous cases.)

In 55 C.J.S. Marriage § 15, page 829, statutes prohibiting marriage between white persons and negroes are considered. Therein it is said:

"Statutes of the character under consideration are held to express

the state's public policy, and have been held to be valid. The theory on which such statutes are held to be valid is that they constitute a prohibition against both races alike and confer no special privileges on either."

In 16A C.J.S. Constitutional Law § 541, it is said:

"* * * it is generally held that statutes prohibiting or declaring void the intermarriage of persons of different races are not violative of the equal protection clause."

Our attention is invited to McLaughlin v. State of Florida (1964), 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222. The decision in that case is undoubtedly correct. However, in connection with Florida's argument relating to interracial marriages wherein it was contended that the legislative history of the Fourteenth Amendment made Florida's miscegenation statutes immune from attack under the Equal Protection Clause, it was said:

"We reject this argument without reaching the question of the validity of State's prohibition against interracial marriage or the soundness of the arguments rooted in the history of the Amendment."

So far as we have been able to determine the Supreme Court of the United States has never held that miscegenation statutes are violative of the Fourteenth Amendment. At the present time there are approximately nineteen states which have miscegenation statutes. The great weight of authority from both federal and state courts is that they are constitutional.

■■ Petitioners contend that they are entitled to a ceremonial marriage and that Sections 12, 13, 14, and 15, supra, interfere with their freedom of religion under the First Amendment to the United States Constitution. In this connection it is noted that freedom of conscience and freedom to believe are absolute but freedom to act

is not. Cantwell v. State of Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213, 128 A.L.R. 1352.

■■ The issues presented herein constitute federal questions. It has been held that decisions of the lower federal courts on federal questions which have not been passed on by the Supreme Court of the United States should be followed by state courts. See cases cited in 21 C.J.S. Courts § 206, at page 377. We have held that decisions of lower federal courts on federal questions, though not controlling, are highly persuasive. Bruce v. Evertson, 180 Okl. 111, 68 P.2d 95, 97.

■ In Anderson v. State, 7 Okl.Cr. 130, 123 P. 442, it was held:

"Principles of public policy demand a stable and fixed construction of constitutional law; and that which has been deliberately decided should not be unsettled, unless clearly erroneous."

We followed that view in Meder v. City of Oklahoma City, Okl., 350 P.2d 916, 924.

A construction of the Constitution definitely stated in prior decisions and consistently adhered to should not be readily departed from, State ex rel. City of Ada v. Williamson, 201 Okl. 547, 207 P.2d 922; decisions construing constitutional provisions should not be overruled except for very weighty reasons, Phelps v. Childers, 184 Okl. 421, 89 P.2d 782; courts should be slow to resort to judicial surgery in upsetting precedents, Edge v. Smith, Okl., 284 P.2d 711, 53 A.L.R.2d 929; and a decision of a Federal Circuit Court which involves a federal question and upholds the constitutionality of the statute under attack is highly persuasive. Bruce v. Evertson, supra.

In view of this court's traditional practice of upholding its former decisions which involve questions of constitutional law, and in view of the fact that the great weight of authority holds such statutes constitutional, and the Supreme Court

the United States not having decided the question, we feel duty bound to again hold the statutes in question constitutional.

Writ denied.

All of the Justices concur.