Jimmy Louis PHILLIPS, Petitioner
Pro Se,

v.

Bill WILLIAMS et al., Respondents.

No. 51721.

Supreme Court of Oklahoma.

Feb. 19, 1980.

Rehearing Denied April 21, 1980.

Merton M. Bulla, Bulla, Horning & Johnson, Oklahoma City, for petitioner.

Jan Eric Cartwright, Atty. Gen., John F. Fischer, II, Asst. Atty. Gen., Oklahoma City, for respondents.

OPALA, Justice:

This case is here on remand from the United States Supreme Court for reconsideration of *Phillips v. Williams*[1] in light of federal-law criteria pronounced in *Greenholtz v. Inmates of Nebraska Penal Complex.*[2] In *Phillips* this court held that minimum standards of federal due process require the Pardon and Parole Board [Board] to give written reasons to a prisoner whose name is removed from a parole consideration docket. The issue on remand is whether parole release provisions of the Oklahoma law, considered as a totality—constitutional, statutory, decisional and rule-prescribed—create an expectation of liberty to which federal due process will in some measure attach its shield, or afford no more than just a "possibility" of release—a mere hope that is unprotected by safeguards of the U.S. Constitution. In this matter of first impression, we hold that the parole procedures here under mandated re-examination do not provide the petitioner/inmate with a liberty interest protected by the fundamental law of the Federal Republic.

Petitioner had been recommended for parole consideration by the correctional review committee [CRC][3] which placed his name on the monthly parole docket. Some time later the Board removed his name. Unable to learn the reasons for the adverse action, Petitioner sought to compel the Board, by mandamus, to provide him with a written explanation. We assumed jurisdiction and granted the writ. Our judgment, later vacated by the U.S. Supreme Court on certiorari, is back here for mandated reassessment.

1. Okl., 583 P.2d 488 [1978].

2. 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 [1979].

3. At the various adult correctional institutions there is a five-member committee consisting of a parole board interviewer, the inmate's case manager and three other Corrections Department employees. The CRC is an arm of that department's community services division. Its primary function is to compile the monthly docket with the names of inmates to be considered by the Board for parole recommendation to the Governor. 57 O.S.Supp.1979 § 514.

Petitioner does not bottom his due process claim on the Forgotten Man Act, 57 O.S.1971 § 332.7, and hence it is not necessary for us to assess here the character of interest a prisoner has in parole consideration that rests on the provisions of that act.

■ Due process may be invoked whenever government action deprives a person of some legitimate "liberty" or "property" interest within the meaning of the U.S. Constitution. The right-privilege dichotomy of the common law is no longer a relevant factor in gauging whether a threatened interest is fit for federal constitutional protection.[4]

■ Interests protected by due process are not always "created by the [Federal] Constitution. Rather, they are [often] created and their dimensions are defined" by some independent source, which consists quite frequently of a state statute or rule entitling the person to certain benefits.[5]

■ One's liberty interest[6] may be entitled to protection even though it is a "statutory creation of the State". *Wolff v. McDonnell*.[7] In *Wolff* the interest to receive the federal shield had its roots in state law. Nevertheless, certain minimum procedures, appropriate under the circumstances, were viewed as mandated by federal due process in order "to insure that the state-created right is not arbitrarily abrogated."[8]

■ A prisoner has no constitutionally protected claim to a release on parole before the expiration of his sentence. Due process will attach its shield to parole determination procedures only if the statutory and regulatory framework of the system is such as to fashion a liberty interest within the meaning of fundamental federal law. In short, an inmate who under the state law has a parole release claim sufficient to constitute a liberty interest under federal law may demand the minimum procedural protections of federal due process. This is the teaching of *Greenholtz.*

■ *Greenholtz* rests on the distinction drawn between being deprived by *parole revocation* of a liberty once granted and being denied a conditional liberty to which one aspires through *parole release.* Revocation procedures are protected from state's arbitrary action.[9] Parole release procedures do not automatically fall in like cate-

4. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 571, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 [1972]; *Morrissey v. Brewer*, 408 U.S. 471, 481–482, 92 S.Ct. 2593, 2600–2601, 33 L.Ed.2d 484 [1972]; In a Court of Appeals decision affirmed by the U.S. Supreme Court— *Bailey v. Richardson*, 86 U.S.App.D.C. 248, 182 F.2d 46 [D.C.Cir. 1950], aff'd 341 U.S. 918, 71 S.Ct. 669, 95 L.Ed. 1352—it was held that procedural due process did not extend to government employees since public employment was a "privilege" and not a "right". The U.S. Supreme Court has rejected the "wooden distinction between 'rights' and 'privileges'" and looked instead to the significance of the state-created or state-enforced interest under consideration with a view to assessing the substantiality of the alleged deprivation. *Roth*, supra, 408 U.S. at 571, 92 S.Ct. at 2706.

5. *Board of Regents of State Colleges v. Roth*, supra note 4, 408 U.S. at 577, 92 S.Ct. at 2709.

6. In *Board of Regents of State Colleges v. Roth*, supra note 4, 408 U.S. at 572, 92 S.Ct. at 2706–2707, the Court stated that liberty "denotes not merely freedom from bodily restraint but also the *right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, estab-lish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized . . . as essential to the orderly pursuit of happiness by free men."* [Emphasis added]

7. 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 [1974]. In *Wolff* the Court held that the due process clause entitles a state prisoner to certain procedural protections when he is deprived of good-time credits because of serious misconduct. The liberty interest there identified did not originate in the federal constitution, which "itself does not guarantee good-time credit for satisfactory behavior while in prison". *Wolff*, 418 U.S. at 557, 94 S.Ct. at 2975. The Court stressed that the "touchstone of due process is protection of the individual against arbitrary action of government." *Wolff*, 418 U.S. at 558, 94 S.Ct. at 2976.

8. *Wolff v. McDonnell*, supra note 7, 418 U.S. at 557, 94 S.Ct. at 2975.

9. *Morrissey v. Brewer*, supra note 4, 408 U.S. at 482–484, 92 S.Ct. at 2600–2602.

gory.[10] A parole system which provides for the "possibility of release" does not create a constitutionally protected liberty interest. A federally protectible expectation of liberty must rest upon more than "a mere possibility or hope" for a favorable result.[11]

This case must turn on our appraisal of the Oklahoma parole release process. If it fashions more than a chance or hope of release, *Phillips* must be reaffirmed; otherwise the writ has to be denied. Helpful in the task is the recent analysis of this subject by the Tenth Circuit in *Shirley v. Chestnut*, 603 F.2d 805 [10th Cir. 1979], where the issue was identical to that before us. We set out that assessment at length:

"Thus, in the present case, the Oklahoma statutes must be examined to determine whether a liberty interest has been created thereby. Basically, Oklahoma has a three-tier system for parole release. The Correctional Review Committee compiles the Pardon and Parole Board's monthly docket scheduling inmates for parole consideration. Pursuant to the Forgotten Man Act, 57 Okl.Stat.Ann. § 332.7 (1971), every inmate must be considered for parole on or before the expiration of one-third of his maximum sentence. In addition, any inmate serving 45 years or more, including a life sentence, shall be considered for parole or clemency after serving 15 years. See Rules of the Board, 57 Okl.Stat.Ann., Chap. 7, App. (Supp. 1977).

An inmate may be placed on the docket for consideration of parole by recommendation of the Correctional Review Committee or by any member of the Board. Any inmate who is rejected for docketing is afforded the opportunity to appear in person before the CRC. All inmates considered and denied docketing by the CRC or by the Parole Board are to be reconsidered by the CRC no later than twelve months subsequent to their last review.

Pursuant to 57 Okl.Stat.Ann. § 332.2, § 354 (1971), the Board is authorized to examine into the merits of applications for parole and make recommendations to the Governor as, in its discretion, the public interest requires, said recommendations being advisory to the Governor and not binding. According to the Board rules, inmates are entitled to a hearing before the Board. The Board does not object to lawyers or any other person appearing personally before the Board and the inmate may present evidence in documentary form. 57 Okl.Stat.Ann., Chap. 7, App. (Supp.1977).

It is stipulated that there are no written criteria for parole release to guide the Parole Board members in their determinations. Chairman Chestnut stated in his deposition that the Board members use their own good judgment. Littleton Fowler, a member of the Board, mentioned education, prior record, family, the severity of the offense, rehabilitative efforts, and future plans as factors which he considers.

When the Pardon and Parole Board determines not to recommend parole, the inmate is notified by the Department of Corrections. No reasons are given for the denial of parole. Favorable recommendations are forwarded to the Governor. 57 Okl.Stat.Ann. § 332 (1971) states that the Governor shall have the power to grant parole upon such conditions and restrictions as he may deem proper. This authority is limited to the extent that it can be exercised only after a recommendation for clemency by the Pardon and Parole Board. No personal interviews are granted. The Governor has no written criteria for parole release.

Thus, the critical distinctions between the Oklahoma statutory scheme and the

---

10. *Greenholtz v. Inmates of Nebraska Penal Complex,* supra note 2, 442 U.S. at 10, 99 S.Ct. at 2105.

11. "Hope"—Latin *spes*—is a term frequently used to describe future interests which are not legally cognizable and hence lie beyond the possibility of judicial vindication. See, for instance, [a] *spes accrescendi*—the hope of surviving, Black's Law Dictionary, 4th Ed. and [b] *spes successionis*—a hope to succeed to property upon the death of its owner, 4 Stroud's Judicial Dictionary 8239 [3rd ed. 1953]; and 1 Stroud's Judicial Dictionary [3rd ed. 1953].

Nebraska statutes are that the former do not declare that parole 'shall' be granted unless certain conditions exist, and there are no written and formally established factors to be considered by the Parole Board or the Governor in evaluating parole applicants. The Board's only statutory guidance in the exercise of its discretion is that it act as the public interest requires, and the sole existing statutory criteria dictate only the time of parole consideration.

We have carefully considered the Oklahoma statutes and other information concerning parole procedures provided in the record. We hold that the Oklahoma statutory scheme outlined above does no more than create a parole system, which in the Supreme Court's view as expressed in *Greenholtz* does not establish a liberty interest. In the absence of such liberty interest, the specific due process procedures requested by the appellants are not applicable."

■ We agree with the analysis of *Shirley*. While the pronouncement on a federal-law question by an inferior federal court is not necessarily binding on us, it is indeed highly persuasive.[12] This is especially so here because we are called upon to measure state law by a federal constitutional-law gauge evolved by the U.S. Supreme Court.

Petitioner's name, initially placed on the docket by CRC recommendation, was later stricken from it by the Board. This occurred before the Board gave its approval to the compilation of names next to be considered and before any formal hearings were held on the CRC-recommended list of prisoners.

Although some minimum departmental criteria are required for each CRC recommendation, an inmate meeting these criteria and receiving a CRC endorsement for next month's consideration, is not absolutely assured of his position on the parole docket. *The very same procedures that authorize a CRC docket placement of a convict's name also authorize its removal from the docket by a majority vote of the Board.* Consideration for release, *via* CRC docketing endorsement, clearly does not rise to the same level of interest that attaches to a parole consideration opportunity under the Forgotten Man statute, supra. The latter appears to be mandated by law.

■ Oklahoma law lacks not only mandated standards of inmate-parole-release eligibility but also those that would structure eligibility for mere consideration of parole release. The only exception is that created by the Forgotten Man Act. That act assures the prisoner eligible under its terms a chance for parole release consideration. Want of structured and mandated parole eligibility standards does not per se constitute denial of due process.[13] The absence of mandated state-law standards—both for release eligibility as well as for eligibility to be considered for parole release—does set Oklahoma apart from Nebraska whose law was considered in *Greenholtz*. It also militates strongly against the notion that our procedures might give rise to some "expectancy of release".

Oklahoma law, viewed as a totality, does not mandate for this petitioner an assured "spot" for parole release consideration. His state-law claim to an opportunity for parole release consideration lacks the necessary attributes of an "expectancy" and hence of a federally-recognized liberty interest. As a "hope" or "possibility", his claim stands unprotected by the Due Process Clause of the Fourteenth Amendment.

State-constitutional-law questions were not considered in the original opinion now on remand from the U.S. Supreme Court. We are not called upon to reach these questions now.

Writ is therefore denied.

12. *Dean v. Crisp*, Okl.Cr., 536 P.2d 961, 963 [1975]; *Jones v. Lorenzen*, Okl., 441 P.2d 986, 989 [1965]; *Bruce v. Everston*, 180 Okl. 111, 68 P.2d 95, 97 [1937].

13. *Greenholtz v. Inmates of Nebraska Penal Complex*, supra note 2, 442 U.S. at 9–10, 99 S.Ct. at 2104–2105.

LAVENDER, C. J., IRWIN, V. C. J., and WILLIAMS, BARNES and HARGRAVE, JJ., concur.

HODGES, DOOLIN and SIMMS, JJ., dissent.

DOOLIN, Justice, dissenting:

I agree with the majority, a convicted felon has no right to parole under the United States Constitution. *Greenholtz* made that very clear. The question herein is not a right to be *considered* for parole, but rather a right to the very minimum in procedural due process in the treatment of an inmate who is *already being considered for parole.*

The majority states the issue to be "whether parole release provisions of Oklahoma law, considered as a totality—constitutional, statutory, decisional and rule-prescribed—create an expectation of liberty to which federal due process will in some measure attach its shield . . ." It decides they do not. In making this decision the majority applies an inflexible construction to our parole procedures and a narrow interpretation of the word "expectation".

The United States Supreme Court has indeed turned the rights of parole hopeful prisoners on the nebulous concept of "expectation of parole," and the precise wording of a state's parole procedures. Certainly I concede this authority. Yet this court may follow the Supreme Court's decree and nevertheless grant the relief sought; there is little doubt Oklahoma's parole scheme does dictate that certain hopefuls; such as petitioner herein, be granted some minimal due process. I therefore dissent.

The *Greenholtz* holding is singularly uncomplicated. An inmate in a correctional institution has no constitutionally protected liberty interest emanating from an expectation of parole unless it is created by the statutory scheme in that particular state.

It held "there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence: . . . the conviction, with all its procedural safeguards, has extinguished that liberty right." The Court held, however, the structure of the Nebraska scheme of parole did indeed create an *"expectancy of release . . . entitled to some measure of constitutional protection."*

Neb.Rev.Stat. § 83–1,114(1) provides in part:

*"Whenever the Board of Parole considers the release of a committed offender* who is eligible for release on parole, it shall order his release unless it is of the opinion that his release should be deferred because:

"(a) There is a substantial risk that he will not conform to the conditions of parole:

"(b) His release would depreciate the seriousness of his crime or promote disrespect for law;

"(c) His release would have a substantially adverse effect on institutional discipline; or

"(d) His continued correctional treatment, medical care, or vocational or other training in the facility will substantially enhance his capacity to lead a law-abiding life when released at a later date." (Emphasis supplied).

On the basis of these provisions the Supreme Court held a constitutionally protected liberty interest arose.

The Supreme Court then examined the Nebraska procedures to determine whether adequate due process was provided. Because it found the procedures did give the measure of due process necessary to protect the statutorily created conditional liberty interest due its inmates, it reversed the circuit court.[1]

---

[1]. Mr. Justice Powell concurring in part and dissenting in part did not believe the applicability of the due process clause to parole release determination depends upon the particular wording of the statute. He was convinced "the presence of a parole system is sufficient to create a liberty interest, protected by the Constitution . . . ." This was also basically the view of Mr. Justice Marshall joined by Justices Brennan and Stevens who additionally believed Nebraska procedures were inadequate.

It is interesting to note the Court approved the Nebraska scheme in part because it did provide an inmate with written reasons for his denial of parole. It held at 99 S.Ct. 2108:

"The Nebraska procedure affords an opportunity to be heard and when parole is denied it informs the inmate in what respects he falls short of qualifying for parole; this affords the process that is due under these circumstances."

That is the sole issue involved in petitioner's application to this court. He seeks a writ directed to the Pardon and Parole Board requiring it to state the reasons his name was removed from the list of inmates to be considered for parole.

There is no doubt under *Greenholtz* if our parole process creates a conditional liberty interest protected by limited procedural due process, petitioner is entitled to be advised in writing of the reasons why his parole was denied.

Under *Greenholtz* a conditional liberty interest is created when an inmate has an "expectancy of parole." In Oklahoma, when, if ever, does this liberty interest arise?

The majority places much reliance on the 10th Circuit case of *Shirley v. Chestnut*, 603 F.2d 805 (10th Cir. 1979). As stated therein, Oklahoma has a three-tier system for parole release: 1) the Correctional Review Committee compiles the Pardon and Parole Board's monthly docket, scheduling inmates for parole consideration; 2) the Pardon and Parole Board recommends inmates for parole, and 3) the final step where parole is conferred by the governor. A careful reading of *Shirley* indicates petitioners therein were seeking due process relief from a different position than that of Jimmy Louis Phillips. There is no indication in the circuit court's opinion that any of the petitioners had once been docketed by the CRC and then removed. Jimmy Louis Phillips has.

Jimmy Louis Phillips had already entered the parole system when he sought relief.

The CRC is provided with minimum criteria when drawing up the parole docket. Those criteria, as submitted by respondents, effective 3–20–78, are as follows: [2]

## MINIMUM CRITERIA FOR CRC RECOMMENDATION OF AN INMATE TO THE PAROLE DOCKET

Department of Corrections employee on a Corrections Review Committee is not authorized to vote for an inmate to a parole docket unless he meets the following criteria at the time he would come before the Pardon and Parole Board:

1. He must have served one-third of his sentence, minus his jail time, unless he meets any of the criteria below.

2. An inmate with a sentence of 45 years or more (including life) must be considered and may be docketed after serving fifteen years.

3. First termers for nonviolent crimes serving sentences of two years or more may be placed on a docket four months before they are eligible.

4. An inmate who has satisfactorily completed ninety days of work release and who has been placed in work release no sooner than eight months prior to one-third parole eligibility may be docketed.

5. Any inmate completing vocational training at Hodgens up to four months prior to parole eligibility may be docketed.

6. Any inmate convicted of DWI or a similar offense may be docketed after serving four months.

7. An inmate may be docketed who meets the above criteria based upon a one-third eligibility date calculated on the basis of his estimated discharge date (calculated as 75% rather than the

---

2. Department of Corrections Operations Memorandum # OP 020104 (Revised) relating to establishment and operation of CRC.

calendar length of his sentence. This must be noted properly on the CRC Summary and Recommendation Sheet. (See Attachment B).

8. For an inmate with a 45 year to life sentence, criteria # 7 may be calculated based on a 45 year sentence.

9. An inmate serving a parole violation may be docketed as outlined in # 7 and # 8 above, (as applied to the remaining portion of the parole violation) or after serving two years on the parole violation whichever is the least.

If an inmate's name is placed on the parole docket by the CRC, he necessarily has qualified for recommendation for parole by the CRC under these standards. If he had not qualified, a CRC member is not authorized to vote for him.

The majority herein as well as the court in *Shirley* holds there is no "expectancy" of parole generated by the bare creation of parole proceedings in our statutes. Assuming the correctness of the majority position respecting the host of inmates who have never advanced to the first step, the CRC docket does not preclude granting to an inmate who has entered the stream of parole consideration, certain minimal rights.

When an inmate is docketed by the CRC, he has a right to assume he is being considered for recommendation for parole. In other words, at the moment he is docketed, he has acquired a special status, whether based on "expectation" of release or not. It is then a conditional liberty interest may be born under Oklahoma's parole procedure. Following *Shirley*, until that time, he has no protected liberty interest.

The majority acknowledges the Forgotten Man Act creates a constitutionally protected liberty interest. If an inmate's name appears on the monthly parole docket through this channel, the majority admits he is entitled to some procedural safeguards. But if his name appears on the monthly docket based on any other minimum criteria, is he not so entitled? There is no rational basis for a distinction once an inmate has been docketed by the CRC.

Certainly the overall effect of apprising an inmate of the reasons for denial would be beneficial to him, in that he could make an attempt to conform to or satisfy the absent criteria prior to his again making application for parole. The Pardon and Parole Board has no legitimate reason for concealing from an inmate the conduct or failings which had the effect of precluding his parole. An inability to provide any reasons suggests the decision is in fact arbitrary. It should not be burdensome to give reasons when reasons exist.[3]

Additionally it is not forbidden that this court give more protection to its citizens than is mandated by the United States Constitution. In *Giles v. Maryland*, 386 U.S. 66, 81, 87 S.Ct. 793, 801, 17 L.Ed.2d 737, 749 (1967) the United States made it clear our federal system entrusts the states with primary responsibility in the criminal area: States are bound by the Constitution's relevant commands but they are not limited by them. A state is free *as a matter of its own law* to grant *more* procedural due process.[4] Even under majority's view it is not necessary to change the views expressed by this court in *Phillips v. Williams*, 583 P.2d 488 because of a desire to apply a strict construction to our parole scheme in an attempt to follow the dictates of *Greenholtz*. Art. II § 7 of the Constitution of the State of Oklahoma provides:

"No person shall be deprived of his life, liberty or property without due process of law."

In a state where our federal courts have consistently recognized the *physical* needs

---

3. See *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

4. See *Oregon v. Hass*, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975); Leader, Criminal Law: Nontestimonial Aspect of Oklahoma's Right Against Self-incrimination, 28 OLR, 22 (1975).

and the rights of our prisoners, I would not hesitate to find Oklahoma due process gives rise to similar *incorporeal* rights, including the right of an inmate to know what obscure circumstances or personal makeup led to his removal from consideration after he had once been acknowledged as a candidate for parole.

In closing I quote from *Monks v. New Jersey State Parole Board*, 58 N.J. 238, 277 A.2d 193, 197 (1971):

"The need for fairness is as urgent in the parole process as elsewhere in the law and it is evident to us that, as a general matter, the furnishing of reasons for denial would be the much fairer course; not only much fairer but much better designed towards the goal of rehabilitation." "[A] 'simple bald rejection' of parole necessarily increases uncertainty and frustration and morbid speculation in the prisoner." [Quoting at p. 198, Samuels, "Parole: A Critique 1969 Crim.L.Rev. (Eng.) 456].

Because petitioner herein was at one time placed on the parole docket by the CRC, he may assume at that time he met one of the above minimum criteria. If such is not the case, he should be so informed. If he was removed for any other reason, he is entitled to know what it is."

I would issue the writ.

I am authorized to state that Justice HODGES and Justice SIMMS concur in the views herein expressed.