Dear Representatives Talley,
¶ 0 The Attorney General has received your request for an official opinion asking, in effect:
1. Are letters written to the Pardon and Parole Board bypersons exercising their constitutional rights a personalcommunication which may be kept confidential pursuant to 51 O.S.24A.14 (1988)?
 2. Are the Constitutional due process rights of the inmateabout whom the letter is written violated when such letters areheld in confidence?
 I.
¶ 1 The Pardon and Parole Board is a "public body" as defined by 51 O.S. 24A.3(2) (1988) and is thereby subject to the provisions of 51 O.S. 24A.1 (1988) et. seq., collectively known as the Oklahoma Open Records Act.
¶ 2 The Oklahoma Open Records Act's definition of "record" encompasses any letter or correspondence received by the Pardon and Parole Board regarding the clemency consideration of an inmate. But for a statutory provision whereby such correspondence is specifically exempted from disclosure, such a "record" would be subject to public access and review.
¶ 3 Title 51 O.S. 24A.2 (1988) provides in pertinent part:
 The purpose of this act is to ensure and facilitate the public's right of access to and review of government records so they may efficiently and intelligently exercise their inherent political power. The privacy interests of individuals are adequately protected in the specific exceptions to the Oklahoma Open Records Act or in the statutes which authorize, create or require the records. Except where specific state or federal statutes create a confidential privilege, persons who submit information to public bodies have no right to keep this information from public access nor reasonable expectation that this information will be kept from public access; provided, the person, agency or political subdivision shall at all times bear the burden of establishing such records are protected by such a confidential privilege.
¶ 4 Title 51 O.S. 24A.5(1) (1988) identifies specific records which are required to be kept confidential and are statutorily exempt from the Oklahoma Open Records Act. Moreover the Oklahoma Open Records Act sets forth a number of specific instances whereby records may be deemed confidential and thereby not readily subject to disclosure.
¶ 5 Correspondence regarding clemency consideration of inmates, however, is not specifically covered by any provision of the Oklahoma Open Records Act unless the correspondence is construed as a personal communication from a person exercising a right secured by the State or Federal Constitution.
¶ 6 Title 51 O.S. 24A.14 (1988) provides specifically, in pertinent part:
 [A] public official may keep confidential personal communications received by the public official from a person exercising rights secured by the Constitution of the State of Oklahoma or the Constitution of the United States.
¶ 7 It is clear from a literal reading of 51 O.S. 24A.14 (1988) that any personal communication conveyed to a public official pursuant to a State or Federal Constitutional right may be deemed confidential. Both the State and Federal Constitutions guarantee a plethora of rights.
¶ 8 This statute is vague as to the constitutional rights involved. In determining if the Pardon and Parole Board may deem confidential correspondence regarding an inmate's clemency consideration, the intent of the legislature in enacting 51 O.S. 24A.14 (1988) must be determined, particularly in light of the public policy and purpose of the Oklahoma Open Records Act expounded in 51 O.S. 24A.2.
¶ 9 Exactly which constitutional rights, both State and Federal, did the Legislature intend to address with the enactment of 51 O.S. 24A.14 (1988)?
 It is a cardinal rule that in the construction of statutes the legislative intent must govern, and to arrive at the legislative intent the entire act must be considered, together with all other enactments upon the same subject, and when the intention of the Legislature can be gathered from the entire statute, words may be modified, altered, or supplied to give the statute the force and effect which the Legislature intended.
(Emphasis added). State v. Tapp, 380 P.2D 260, 265 (Okla. 1963). See also Oklahoma Natural Gas Co. v. CorporationCommission, 216 P. 917 (Okla. 1923); Board of Education of Cityof Okmulgee v. State Board of Education, 200 P.2d 394 (Okla. 1948); Curtis v. Registered Dentists of Oklahoma, 143 P.2d 427
(Okla. 1943); In re Blain, 172 P.2d 795 (Okla. 1946).
¶ 10 The First Amendment of the United States Constitution provides:
 Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.
(Emphasis added).
¶ 11 Likewise, Oklahoma has a provision embodied in Article II, Section 22 of the Oklahoma Constitution, which states in pertinent part:
 Every person may freely speak, write, or publish his sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press.
¶ 12 Further, Article II, Section 3 of the Oklahoma Constitution provides:
 The people have the right peaceably to assemble for their own good, and to apply to those invested with the powers of government for redress of grievances by petition, address, or remonstrance.
(Emphasis added).
¶ 13 The above provisions viewed along with the stated purpose of the Act, that being "to ensure and facilitate the public's right of access to and review of government records so they may efficiently and intelligently exercise their inherent political power," 51 O.S. 24A.2 (1988), lead to the conclusion that the Constitutional rights, both State and Federal, to which 51 O.S. 24A.14 refers must be interpreted to relate only to those rights associated with the government's power to redress grievances.
¶ 14 Unquestionably, the Pardon and Parole Board is a public body vested with the limited power to redress grievances through its statutory power to recommend, or not, that inmates be granted clemency by the Governor. 57 O.S. 332.1 (1981) et seq., as amended. See especially, 57 O.S. 332.2 which provides for the attendance, at meetings of the Board, of citizens in support of, or in opposition to, any inmate being considered for parole. This provision indicates further that communication to the Board falls within the parameters of citizen speech seeking redress of grievances.
¶ 15 Based on the above stated reasons, the Pardon and Parole Board is vested with the statutory authority and discretion to deem confidential personal communications from citizens regarding the Board's recommendation for or against clemency considerations for inmates. (See also, A.G. Opinion No. 88-079, in which the Attorney General found that similar protections may be afforded citizens communicating complaints to the Board of Governors of Registered Dentists.)
 II.
¶ 16 Both the State and Federal court systems have entertained the question of what Due Process rights must be afforded inmates during their appearances before a Pardon and Parole Board. Fortunately, both court systems have reached the same conclusion.
¶ 17 "A prisoner does not have a constitutional right to cross-examine members of the Board or persons who may have provided information to the Board." Fronczak v. Warden, El RenoReformatory, 431 F.Supp. 981 (W.D. Okla. 1976), affirmed553 F.2d 1219 (10th Cir. 1977), citing, Tarlton v. Clark,441 F.2d 384 (5th Cir. 1971), cert. denied, 403 U.S. 934, 91 S.Ct. 2263,29 L.Ed.2d 713 (1971).
¶ 18 The Court in Fronczak went on to state:
 The prisoner may be entitled to "modicum of due process" in a hearing to consider his release on parole. See Mower v. Britton, [504 F.2d 396 (10th Cir. 1974)]. Such due process, however, does not embrace the full panoply of rights due a parolee in a parole revocation hearing and: "he is not entitled to an opportunity to present witnesses and documentary evidence in support of his release on parole. Nor is an inmate entitled to confront and cross-examine persons who have provided the Board with adverse information, or to interrogate the Board members. A prisoner does not have a constitutional right to examine his record or Parole Board files, and he is not entitled to rebut information in possession of the Board which militates against his parole. The foregoing rights are the kind usually associated with an adversary-type hearing or adjudicatory proceedings in which vital issues of fact are to be decided which affect important rights of the litigants. The Board does not function as an adversary of the prisoner, and it has an interest in releasing those who qualify for parole.
Fronczak, 431 F. Supp. at 987, citing Menechino v. Oswald,430 F.2d 403, 407-08, (2d Cir. 1970), cert. denied,400 U.S. 1023, 91 S.Ct. 588, 27 L.Ed.2d 635 (1971); Scarpa v.United States Board of Parole, 477 F.2d 278 (5th Cir. 1973) vac.414 U.S. 809, 94 S.Ct. 79, 38 L.Ed.2d 44 (1973).
¶ 19 In Phillips v. Williams, 608 P.2d 1131 (Okla. 1980), the Oklahoma Supreme Court held that consideration for parole is not a right which rises to the level of a liberty interest. Specifically the Court stated:
 A parole system which provides for the "possibility of release" does not create a constitutionally protected liberty interest.
608 P.2d at 1134.
¶ 20 Clearly, without a liberty and/or property interest at stake no due process is required. Therefore the use of confidential correspondence regarding clemency considerations for inmates before the Pardon and Parole Board is not violative of Federal or State due process guarantees.
¶ 21 It is, therefore, the official opinion of the AttorneyGeneral that:
 1. Letters written to the Pardon and Parole Board regardingclemency consideration of inmates are personal communicationswhich the Pardon and Parole Board may deem confidential pursuantto the provisions of title 51 O.S. 24A.14 (1988).
 2. The Federal and State Constitutional due process rights ofinmates are not violated by the Pardon and Parole Board'sdetermination that such letters are confidential.
ROBERT H. HENRY Attorney General of Oklahoma
TAMMY M. THOMPSON Assistant Attorney General