9 F.3d 117
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Jorge Mario HERRERA, Plaintiff-Appellant,
v.
Clarence HARKINS, Jr.; Farrel Hatch; Carl B. Hamm;
Augusta E. Mann; Marzee Douglass; Jeri Askens;
Carolyn Crump, Defendants-Appellees.
 No. 93-6101.
 United States Court of Appeals, Tenth Circuit.
 Oct. 29, 1993.
 
 ORDER AND JUDGMENT[1]
 Before SEYMOUR, ANDERSON, and EBEL, Circuit Judges.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R.App. P. 34(a); 10th Cir. R. 34.1.9. Therefore, the case is ordered submitted without oral argument.
 
 
 2
 In this pro se action brought pursuant to 42 U.S.C.1983, the Plaintiff-Appellant, Jorge Mario Herrera, alleges that the Oklahoma Pardon and Parole Board relied on false information submitted by the government during a hearing in which he was denied parole. Herrera seeks to expunge three allegedly false items from his prisoner's file. Concluding that only one item in Herrera's parole file was erroneous, and that the item had been removed from the file, the district court granted the Board's motion to dismiss. We affirm. Because the Oklahoma parole system does not establish a liberty interest, we hold that Herrera has failed to state a claim under the Due Process Clause of the Fourteenth Amendment.
 
 I.
 
 3
 Following Herrera's conviction in May 1987 for distribution of a controlled dangerous substance (Heroin), the Oklahoma Pardon and Parole Board ["Board"] denied him parole in June 1990.[2] Immediately after the Board rendered its decision, Herrera contacted the Board to object to its use of the following allegedly false information provided by a parole investigator: "Drug trafficking appears to be the [Herrera] family business."
 
 
 4
 In a letter dated August 2, 1990, the Board informed Herrera of its conclusion that "police reports by the Oklahoma City police Department ... do not support the statement that your family is involved in the drug business." Record, tab 4, at 4. The Board assured Herrera that a copy of the August 2nd letter would be placed in his parole file.
 
 
 5
 In November 1990, Herrera filed this 1983 action in the United States District Court for the Western District of Oklahoma. Naming the chairman, vice-chairman, and three members of the Board as defendants, Herrera sought the following relief: (1) "Declaratory and Injunctive relief ordering the Defendants to stop denying Plaintiff Parole Recommendations based on" erroneous information; and (2) "a new Parole Board Hearing" in which the Board ignored the false information. The district court dismissed the action, ruling that habeas corpus provided the exclusive remedy because Herrera was "primarily challenging the fact or duration of his imprisonment." Order of December 14, 1990.
 
 
 6
 Upon Herrera's appeal of this ruling, we reversed. Herrera v. Harkins, 949 F.2d 1096 (10th Cir.1990). Construing Herrera's pro se complaint liberally as an attack on the parole procedures, Haines v. Kerner, 404 U.S. 519, 520 (1972), we concluded that 1983 provided a proper statutory basis for such an action. While the district court correctly surmised that a party may challenge the result of a parole hearing only by filing a habeas petition after exhausting state remedies, we construed Herrera's 1983 action as seeking to correct constitutionally defective parole procedures. Herrera, 949 F.2d at 1098; Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex, 442 U.S. 1 (1979) (reaching the merits of prisoners' 1983 suits attacking state parole procedures). Following our remand, United States Magistrate Judge Doyle W. Argo issued an order pursuant to Martinez v. Aaron, 570 F.2d 317 (10th Cir.1978), requesting a special report from the Board about the factual basis of Herrera's civil rights complaint. In its report filed on April 24, 1992, the Board informed the court that the statements in the 1990 parole investigator's report concerning the Herrera family's alleged drug activities had been deleted from the 1991 parole investigator's report. On April 24, 1992, the Board filed a motion to dismiss this action. In response, Herrera filed, and the court granted, a motion to amend his complaint.
 
 
 7
 On July 10, 1992, Herrera filed an Amended and Supplemental Complaint, alleging that three items in his parole file contained false information: (1) the 1990 parole investigator's report indicating that drug trafficking "appears to be the [Herrera] family business"; (2) an Oklahoma City Police Department Report dated February 2, 1987, in which Detective Robert Bonny revealed that, acting undercover, he negotiated to purchase cocaine from Herrera's brother; and (3) a June 3, 1991 letter submitted by Oklahoma County Assistant District Attorney Sandra Howell-Stensaas stating that Herrera was "involved in a large scale network of cocaine and heroin and marijuana traffickers" and was "involved in the attempted sale of TONS of marijuana and pounds of cocaine and heroin." Record, tab 41, at 10 (emphasis in original). These items--along with the Board's letter of correction regarding the 1990 parole investigator's statement and the 1991 and 1992 parole investigation reports that did not contain the statement regarding the Herrera family's alleged drug trafficking--were contained in the parole file that the Board reviewed in denying Herrera parole in June 1991 and June 1992.
 
 
 8
 Because Herrera's amended complaint challenged the veracity of the police report and the Assistant District Attorney's letter for the first time, the Magistrate requested a supplemental special report from the Board on August 7, 1992. On August 11, 1992, the Defendants filed a supplemental brief in support of their motion to dismiss originally filed on April 24, 1992. On March 9, 1993, the district court adopted the Magistrate's report and recommendation, and granted the Defendants' motion to dismiss. Herrera timely filed his Notice of Appeal on March 16, 1993.
 
 II.
 
 9
 We review de novo the dismissal of a complaint under Fed.R.Civ.P. 12(b)(6), applying the same scrutiny to the complaint as did the district court. Ayala v. Joy Mfg. Co., 877 F.2d 846, 847 (10th Cir.1989). "We will uphold a dismissal only when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief." Jacobs, Visconi & Jacobs, Co. v. City of Lawrence, 927 F.2d 1111, 1115 (10th Cir.1991).
 
 
 10
 Herrera's civil rights claim under 1983 alleges that the Board's reliance on false information deprived him of due process. It is axiomatic that the Due Process Clause of the Fourteenth Amendment only applies when the challenged governmental action deprives an individual of life, liberty, or property. Greenholtz, 442 U.S. at 7. In Greenholtz, the Court concluded that due process is not necessarily implicated when a state provides for the possibility of parole. Id. at 7 ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."). To determine whether a state parole scheme establishes a liberty interest that implicates due process, the Court looked to the state law. Id. at 12; see also Connecticut Board of Pardons v. Dumschat, 452 U.S. 458, 466-67 (1981) (juxtaposing the "unfettered discretion" Connecticut law vests in its Board of Pardons with the express mandates in Nebraska's parole statutes). The Court in Greenholtz held that Nebraska parole statutes establish a liberty interest protected by due process because the provisions provide that the Board of Parole "shall" release an inmate unless one of four designated reasons is found. Greenholtz, 442 U.S. at 11.
 
 
 11
 In sharp contrast to the Nebraska parole statutes that confine the board's discretion, we have held, and Herrera concedes, that the Oklahoma's parole statutes do not establish a liberty interest protected by the Due Process Clause, because the Oklahoma Pardon and Parole Board is empowered with broad discretion. Shirley v. Chestnut, 603 F.2d 805, 807 (10th Cir.1979) (articulating several differences between the Oklahoma and Nebraska parole systems). Because the Oklahoma parole system does not establish a liberty interest, Herrera's due process claim must fail. Id.; Phillips v. Williams, 608 P.2d 1131, 1135 (Okl.) ("Oklahoma law lacks not only mandated standards of inmate-parole-release eligibility but also those that would structure eligibility for mere consideration of parole release."), cert. denied, 449 U.S. 860 (1980).[3] Finally, no amendments to the Oklahoma parole statutes adopted after our decision in Shirley establish a liberty interest in parole.
 
 
 12
 In fact, the Board timely acknowledged Herrera's letter in August 1990 challenging the veracity of the parole investigator's statement in the 1990 report regarding Herrera's family--and both inserted a letter of correction in Herrera's file and removed the statement in the 1991 and 1992 reports. Record, tab 41, at 24-31. Prior to conducting the parole hearing, the Board granted Herrera access to his parole file and afforded Herrera the opportunity to rebut information contained in the file.[4] Herrera does not dispute the fact that the Board's hearing offered him an additional opportunity to challenge the government's statements. Nor does Herrera allege that the Board knowingly relied on false information, conduct which one court has deemed arbitrary and capricious in violation of due process. See Monroe v. Thigpen, 932 F.2d 1437, 1442 (11th Cir.1991) (parole board admitted knowledge of the falsity of information upon which it relied).
 
 
 13
 Given the likelihood that disputes about the veracity of information contained in an inmate's parole file often arise, a parole board, as here, "adequately safeguards against serious risks of error" when it permits an inmate to inspect the information in his parole file, to appear before the Board, and to submit documents and letters supporting his parole candidacy. Greenholtz, 442 U.S. at 15. In the absence of a state-created liberty interest in parole under Oklahoma law, and because the Board afforded Herrera the opportunity to refute the government's statements, Herrera's due process claim under 1983 was properly dismissed.
 
 
 14
 Accordingly, we AFFIRM.
 
 
 
 [1]
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir. R. 36.3
 
 
 [2]
 The Board also conducted parole hearings in June 1991 and June 1992, and denied Herrera parole each time
 
 
 [3]
 In Phillips, the Oklahoma Supreme Court explained that the sole statutory provision governing parole eligibility is the Forgotten Man Act, 57 Okl. Stat. Ann. 332.7, which assures inmates eligible under its terms an opportunity for parole consideration. Phillips, 608 P.2d at 1135. Herrera's due process claim does not allege that the Board deprived him of this opportunity for consideration
 
 
 [4]
 Taking the initiative to express his view about statements in his parole file, Herrera wrote a letter to the Board dated May 1, 1992 in which he identified the allegedly false information