1999 OK 26

**Isa Abd'Allah Ramadan SHABAZZ, a/k/a Jimmy Phillips, Petitioner/Appellant,**

v.

**Frank KEATING, Governor of the State of Oklahoma; Ray Page, Anita M. Bridges, C. Michael Zacharias, Nadine McPherson, and Susan B. Loving, members of the Oklahoma Pardon and Parole Board; Steve Hargett, Warden of the Lexington Correctional Center; Phillip L. Stambeck, Assistant District Attorney of Oklahoma County; and/or the State of Oklahoma, Respondents/Appellees.**

No. 87,948.

Supreme Court of Oklahoma.

April 6, 1999.

As Corrected April 12, 1999.

Rehearing Denied May 25, 1999.

As Corrected July 19, 1999.

Isa Abd'Allah Ramadan Shabazz, Karnes City, Texas, pro se.

W.A. Drew Edmondson, Attorney General, Steven E. Lohr and Patrick Crawley, Assistant Attorneys General, Oklahoma City, Oklahoma for Respondents.

OPALA, J.

¶ 1 The dispositive issue tendered is whether sanctions may be imposed under the provisions of 57 O.S.Supp.1995 § 566(C) [1] for an inmate's quest to secure *an overbroad remedy of release from imprisonment* as a consequence of the Pardon and Parole Board's allegedly wrongful denial of his parole, asserted to have been tainted by the decisionmakers' access to materials that reflect adversely on the prisoner's eligibility for release. We answer in the negative.

I

## THE ANATOMY OF LITIGATION

¶ 2 Isa Abd'Allah Ramadan Shabazz [Shabazz or inmate], an incarcerated prisoner, became aware in January 1996 that at the time of his personal appearances before the Oklahoma Pardon and Parole Board [board], beginning in 1991 and continuing annually until 1996, board members reviewed and considered, as a part of his file, a 1991 letter written by Assistant District Attorney Phillip

1. The terms of 57 O.S.Supp.1995 § 566(C) are:

"(C) If the court determines before or at trial that one or more of the causes of action are frivolous or malicious, any one or more of the following sanctions may be imposed:

*1. Award attorney fees and actual costs incurred by the state, the Department of Corrections, another state agency, a political subdivision, the Attorney General's Office, or the defendant, not to exceed Two Thousand Five Hundred Dollars ($2,500.00) per frivolous cause of action;*

2. Court costs not to exceed Five Hundred Dollars ($500.00) per cause of action;

*3. Order the Department of Corrections to revoke up to seven hundred twenty (720) earned credits accrued by the inmate;*

4. Order the Department to revoke permission to have nonessential personal property of the inmate, including, but not limited to, televisions, radios, stereos, or tape recorders. If permission is revoked, the Department shall take appropriate precautions to protect the property during the period of the revocation; or

5. Impose a civil sanction in an amount not to exceed One Thousand Dollars ($1,000.00)." (Emphasis supplied).

L. Stambeck [Stambeck]. The letter included multiple references to Shabazz's alleged abuse of the writ of habeas corpus and of proceedings for post-conviction relief as well as to his use of many variations of his original surname. Stambeck's letter implored, on behalf of all "law abiding citizens," that Shabazz not be paroled because he should *"never* be allowed to pray [sic] upon the peaceful members of the human race again" (emphasis in original).

¶ 3 Shabazz *sought immediate release by habeas corpus* pressed against the Governor, parole board members, warden of the Lexington Correctional Center and Stambeck. Advising Shabazz that his plea was frivolous, the Attorney General's office afforded him an opportunity to withdraw it. Shabazz refused and the district court ruled his *pro se* petition for writ of habeas corpus to be frivolous. The State moved against Shabazz for imposition of sanctions under the authority granted by the provisions of 57 O.S.Supp.1995 § 566(C)[2] for one's filing frivolous pleadings. Shabazz's response challenged the cited statute's constitutional validity.[3]

¶ 4 The district court (a) *imposed* as a sanction a counsel-fee award of $1,298.68, court costs of $81.00, and a revocation of 720 earned credits, (b) *determined* the sanctioning statute (§ 566(C)) to be valid against Shabazz's constitutional attack and (c) *adopted* for Shabazz's future filings in the state court the same preconditions that stood imposed on him by the U.S. District Court for the Western District of Oklahoma.[4] The Court of Civil Appeals affirmed.

¶ 5 Certiorari was granted to review a *single issue—the legal correctness of sanctions.* We hold that insofar as the order on review imposes sanctions on Shabazz, it must be reversed with directions to expunge them from the trial court's record.

## II

## THE ESSENCE OF SHABAZZ'S CLAIM

¶ 6 According to Shabazz's amended petition, Stambeck's letter in the prisoner's file, with its references to his alleged "writ writing" activities and legal surname changes, is the reason for his parole's denial. The board's consideration of Stambeck's tainted letter, Shabazz claims, (1) *deprives* him of "substantive due process," (2) *offends* the equal-protection guarantee of the fundamental law and (3) *denies* his constitutional right of access to the courts. Shabazz's quest for release by habeas corpus is based on what he suggests to be "the vindictive nature of the letter" and the improper weight given its text by the board. The vindictive letter, we are urged, supplies an impermissible motive for denial of his parole.[5]

## III

## THE PAROLE BOARD'S RESPONSE

¶ 7 Through its counsel, the Attorney General [AG], the board argues that habeas corpus is an appropriate remedy only when a prisoner is being held illegally. According to the AG, habeas corpus relief cannot lie because Shabazz has provided no support for his claim that the board took into account the

---

2. *Supra* note 1.

3. Shabazz claimed his due process and equal protection rights under the First and Fourteenth Amendments had been violated. His constitutional right of access to the courts also was pressed. Shabazz cited violations of the Religious Freedom Restoration Act of 1993.

4. The journal entry imposed five *preconditions* on Shabazz for future filings in the District Court, Oklahoma County:

"1) he must carry a stronger burden of proof that he is economically unable to pay filing fees as required by 28 O.S.Supp.1995, § 152 and 12 O.S.Supp.1995, § 2003.1(C); 2) he must demonstrate to the Court that his action is commenced in good faith and not malicious or without arguable merit; 3) his pleadings must be signed as required by 12 O.S.Supp. 1994, § 2011; 4) he must include in every petition a list of every previous action filed including the party or parties sued, the basis for the claim, and the final disposition of the action, the court in which it was filed, and the date of filing and date of disposition; and 5) he must send all the pleadings to the Respondents and provide the Court with proof of service. A failure to comply with or a false representation as to any of these preconditions will result in the imposition of further sanctions, including the imposition of fines and costs, and appropriate punishment for contempt of Court."

5. For this notion, Shabazz relies on *North Carolina v. Pearce,* 395 U.S. 711, 725–26, 89 S.Ct. 2072, 2080–81, 23 L.Ed.2d 656 (1969) and *Thompson v. Armontrout,* 808 F.2d 28 (8th Cir. 1986).

content of Stambeck's letter. Even a mandamus remedy would not be available to Shabazz, the AG asserts, *because he has no clear legal right to parole. In short, the AG contends that because Shabazz can demonstrate no entitlement,* either by habeas corpus or by mandamus, *to the remedy he sought,* his petition was facially frivolous within the meaning of 57 O.S.Supp.1995 § 566(B)(1).[6] As the AG analyzes the problem, Shabazz was advised to correct the noted deficiencies in his petition, but failed to do so. By willfully ignoring the warnings, as well as by filing numerous other frivolous petitions, the AG argues that Shabazz has demonstrated malicious intent in pressing for the relief sought.

## IV

## OKLAHOMA'S PAROLE PROCESS IS UTTERLY FREE FROM THE RESTRAINT OF THOSE CONSTITUTIONAL STRICTURES THAT SURROUND WITH PROCEDURAL SAFEGUARDS A PERSON'S LIBERTY INTEREST

### A.

### *No Part Of The Parole Process May Be The Subject Of The Courts' Due Process Scrutiny*

 ¶ 8 Federal jurisprudence teaches that an Oklahoma prisoner has no constitutionally protected claim to be released on parole before the expiration of his sentence.[7] Due process will attach its shield to parole determination procedures *only if* the statutory and regulatory framework of the state system is sufficient to fashion a liberty interest within the meaning of fundamental federal law.[8] A parole regime which provides for the mere possibility of earlier than the end-of-sentence release does not create a constitutionally protected liberty interest.[9]

 ¶ 9 In short, there is no protectible liberty interest in an Oklahoma parole. According to the teachings of *Phillips v. Williams,*[10] this State's parole release procedure,[11] which affords *no more* than an *expectation* (or hope) of parole,[12] *is not surrounded with due process protection.*[13] No *due process strictures can be applied* to test the permissible parameters of the parole process. This is so because the parole function *neither* leads to *nor* may ripen into a liberty interest. Shabazz's argument must hence be rejected. *He clearly is not entitled to be protected against routine agency recordkeeping that may consist of material which could have been excludable from decisionmakers' access if an Oklahoma parole quest were a liberty interest.*[14]

6. For the pertinent terms of 57 O.S.Supp.1995 § 566(B)(1), see *infra* note 21.

7. *Greenholtz v. Inmates of Nebraska Penal Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 2104, 60 L.Ed.2d 668 (1979)(conviction of a crime extinguishes one's liberty; there is no additional constitutional right to release from incarceration before expiration of a valid sentence). *Greenholtz* distinguishes between being deprived by parole revocation of a liberty once granted and being denied the aspiration to liberty through parole release. *Id.,* 442 U.S. at 9–10, 99 S.Ct. at 2105. The former enjoys due process protection, the latter does not. *Morrissey v. Brewer,* 408 U.S. 471, 482–484, 92 S.Ct. 2593, 2600–2602, 33 L.Ed.2d 484 (1972).

8. *Greenholtz, supra* note 7, holds that, under Nebraska law, an inmate has a parole release claim that creates a liberty interest under federal law. *Id.,* 442 U.S. at 9–10, 99 S.Ct. at 2105.

9. *Id.,* 442 U.S. at 9–10, 99 S.Ct. at 2105; *Shirley v. Chestnut,* 603 F.2d 805, 807 (10th Cir.1979).

10. 1980 OK 25, 608 P.2d 1131, 1135.

11. For an assessment of the Oklahoma parole release process, see *Phillips, supra* note 10 at 1134–35, quoting from *Shirley, supra* note 9 at 806–07.

12. Oklahoma law lacks not only mandated standards of inmate-parole-release eligibility but also those that would structure eligibility for mere consideration of parole release. A state-law claim to an opportunity for parole release consideration lacks the necessary attributes of a federally-recognized liberty interest. *Phillips, supra* note 10 at 1135.

13. *Phillips, supra* note 10 at 1135; *Shirley, supra* note 9 at 807.

14. The procedure that surrounds the parole process need not comply with the strictures mandated for proceedings in which a constitutionally protectible interest is implicated. Had Oklahoma's parole process been recognized as con-

## B.

### The Board's Consideration Of The Offending Letter Is Impervious To Adversarial Testing In A Judicial Forum

¶ 10 An inmate cannot confront the board in the context of an adversarial proceeding. *None is statutorily provided.* The board is *explicitly exempted* from compliance with the adjudicative process in Art. II of the Administrative Procedures Act [APA].[15] A trial-type hearing is neither *mandated nor appropriate* for review of the board's use of material placed in a prisoner's file. Because *no trial-type procedure* governs a parole consideration [16] and there is no protectible liberty interest in one's earlier than his end-of-sentence release,[17] *the board is the sole judge of what materials may be considered in the decision-making process.*[18] In short, this court cannot dictate to the board what information may be taken into account in the course of its deliberations. *No action will hence lie against the board either for expungement of public documents from the prisoner's file or for invalidation of a parole's denial.*

¶ 11 Shabazz incorrectly targeted the board for that body's wrongful consideration

---

ferring a liberty interest, a hearing consistent with the teachings of *Cafeteria & Restaurant Workers v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961), would have been the prisoner's due.

15. 75 O.S.Supp.1996 § 250.4(B)(5).

16. 75 O.S.Supp.1996 § 250.4(B)(5).

17. *Phillips, supra* note 10 at 1133–34.

18. *Greenholtz, supra* note 7, 442 U.S. at 9–10, 99 S.Ct. at 2105; *Phillips, supra* note 10 at 1134–35.

19. For the pertinent terms of 57 O.S.Supp.1995 § 566(C), see *supra* note 1.

20. The pertinent terms of 12 O.S.Supp.1994 § 2011 are:
"* * *B. REPRESENTATIONS TO COURT. By presenting to the court, whether by signing, filing, submitting, or later advocating, a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
* * *
2. The claims, defenses and other legal contentions therein are warranted by existing law

---

of the allegedly vindictive and irresponsibly placed material in the prisoner's file.

## V

### GAUGED BY THE *BREWINGTON* STANDARD FOR PERMISSIBLE LIMITS ON PENALIZING FRIVOLOUS LITIGATION, SANCTIONS WILL NOT LIE AGAINST SHABAZZ FOR FILING THE PROCEEDING UNDER REVIEW

¶ 12 The trial court *found* Shabazz's habeas corpus petition to be frivolous and imposed sanctions in reliance on the provisions of 57 O.S.Supp.1995 § 566(C) [19] and of 12 O.S.Supp.1994 § 2011(C).[20] Both statutes authorize the imposition of sanctions for filing frivolous pleadings. Section 566(B)(1) defines as a "frivolous" claim one "having no reasonable basis in law or fact, or lacking any good faith legal argument for the extension, modification, or reversal of existing law." [21]

### A.

### The Brewington Standard

¶ 13 In *TRW/Reda Pump v. Brewington* [22] the court announced the standards for imposition of a counsel-fee award for lodging a "patently frivolous appeal" within the meaning of 20 O.S.1991 § 15.1.[23] Because

---

or by a nonfrivolous argument for the *extension, modification, or reversal* of existing law or the establishment of new law;
* * *
C. SANCTIONS. If, after notice and a reasonable opportunity to respond, the court determines that subsection B of this section has been violated, the court shall, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subsection B of this section or are responsible for the violation.* * * " (Emphasis supplied).

21. The terms of 57 O.S.Supp.1995 § 566(B)(1)are:

B. As used in this section:
1. "Frivolous" means having no reasonable basis in law or fact, or lacking any good faith legal argument for the extension, modification, or reversal of existing law;

22. 1992 OK 31, 829 P.2d 15, 22–23.

23. The terms of 20 O.S.1991 § 15.1 are:

On any appeal to the Supreme Court, the prevailing party may petition the court for an additional attorney fee for the cost of the ap-

the language of § 15.1 is similar to that in § 566, the teachings of *Brewington* are instructive here. *A patently frivolous appeal is one having no legitimate legal or factual basis and is so totally devoid of merit as to be regarded as facially unworthy of consideration.*[24] *All doubts concerning whether the appeal is frivolous must be resolved in appellant's favor.*[25]

## B.

### *Excessive Use of Sanctions To Punish An Inmate's Efforts to Clarify the Law For The Purpose Of Preventing Irresponsible Documents To Cloud the Legitimacy of Parole Process Would Place An Impermissible Burden On Prisoners' Access To The Courts*

¶ 14 Sanctions are appropriate when a prisoner's pleading is unreasonable under all the circumstances in existence at the time of filing. Excessive use of sanctions to punish litigants for a legitimate effort *to clarify existing law* has a negative impact on a prisoner's unimpeded access to the courts. It is in violation of Art. 2, § 6, Okl. Const.[26]

¶ 15 *Oklahoma jurisprudence is silent on what impact the absence of liberty-* interest characteristics in the State's parole process will have *upon* the contents of material the board could use in considering a prisoner for parole. *There is no extant decisional law clearly pronouncing that since an Oklahoma prisoner's quest for parole is no more than a mere expectation, the entire process by which it is granted or withheld is freed from due process strictures.*

¶ 16 Shabazz had no means of learning from available (or accessible) legal sources (or literature) at hand that a prosecutor's act of placing a highly prejudicial instrument on file with the Oklahoma parole board would go unprotected by the constitutional safeguards of due process. His exercise of the right of access to the courts [27] was impermissibly penalized when sanctions came to be imposed for his attempt to purge his parole file of a report alleged to contain material serving no purpose other than that of prosecutorial vindictiveness.

¶ 17 Resolving as we must all doubts in Shabazz's favor, we hold today that, when measured by the standards of *Brewington*,[28] the trial court's order imposing sanctions cannot pass muster.[29]

---

peal. In the event the Supreme Court or its designee finds that the appeal is without merit, any additional fee may be taxed as costs.

**24.** *Brewington, supra* note 22 at 22–23.

**25.** *Id.* at 22–23.

**26.** The pertinent terms of Art. 2, § 6, Okl. Const., are:

"The courts of justice of the State shall be *open* to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation...." (Emphasis supplied).

It is well established by federal case law that prisoners have a constitutional right of access to the courts. *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *see also Prock v. District Court of Pittsburg County,* 1981 OK 41, 630 P.2d 772, 775.

**27.** *Carter v. Carter,* 1989 OK 153, 783 P.2d 969, 970; *Prock, supra* note 26 at 775.

**28.** *Brewington, supra* note 22 at 22–23.

**29.** There are at least two decisions in the federal circuit jurisprudence *which appear to fashion a due process claim to a prisoner's parole file that is* free from tainted material. *Paine v. Baker,* 595 F.2d 197 (4th Cir.1979) (in a pre-*Greenholtz* case, the court held that an inmate has a limited due process right to have erroneous information expunged from the parole board's record); *Monroe v. Thigpen,* 932 F.2d 1437 (11th Cir.1991) (the court found that where parole did not constitute a liberty interest, *a state parole board's admitted use of false information was nonetheless impermissible as arbitrary and capricious* ). Although neither *Paine, supra,* nor *Monroe, supra,* has been expressly overruled, later 11th and 4th circuit jurisprudence clouds their present-day viability. *O'Kelley, v. Snow,* 53 F.3d 319, 321–322 (11th Cir.1995); *Hill v. Jackson,* 64 F.3d 163, 170–171 (4th Cir.1995). *See also Johnson v. Rodriguez,* 110 F.3d 299, 308 (5th Cir.1997) ("It is our view that the procedural Due Process protections created in *Monroe* and *Paine* are in essence inconsistent with subsequent precedent ... and that both cases have thus been effectively overruled. Whatever the viability of these anomalous cases today, our precedent is definite and precise on this point: in the absence of a cognizable liberty interest, a state prisoner cannot challenge parole procedures under the Due Process Clause"); *Hundley v. McKune,* 23 Kan.App.2d 187, 929 P.2d 1382, 1386 (1996); *State ex rel. Hattie v. Goldhardt,* 69 Ohio St.3d 123, 630 N.E.2d 696, 698 (1994).

## VI

### SUMMARY

¶ 18 *There is no extant jurisprudence* pronouncing that since an Oklahoma parole quest is no more than a prisoner's *expectation* of an earlier than his end-of-sentence release, the *entire process* by which it is granted or withheld is freed from those due process strictures that surround a liberty interest. The parole board is explicitly exempted from compliance with the APA's Art. II trial-type adjudicative process. The board's access to and consideration of an offending letter is impervious to judicial scrutiny in a prisoner's action. The sanctions imposed on Shabazz place an impermissible burden on his access to the courts in a legitimate, first-impression quest to clarify a prisoner's due process protection against parole decisionmakers' use of records that may contain *irresponsible content.*

¶ 19 On certiorari granted to review a single issue in an inmate's petition—the legal correctness of imposed sanctions—the Court of Civil Appeals' opinion is vacated; insofar as the trial court's order, now on certiorari review, imposes sanctions on Shabazz for filing a frivolous action, it is reversed with directions to expunge from the record the order's sanctioning portion.

¶ 20 SUMMERS, C.J., HARGRAVE, V.C.J., and LAVENDER, SIMMS, OPALA, ALMA WILSON, and KAUGER, JJ., concur.

¶ 21 WATT, J., concurs in Parts I, II, III and IV; dissents from Part V.

¶ 22 HODGES, J., dissents.

