**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

**August 9, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

JOSEPH M. JACKSON,

Petitioner - Appellant,

v.

STEVEN HARPE, Director,

Respondent - Appellee.

No. 24-6011
(D.C. No. 5:23-CV-00463-G)
(W.D. Okla.)

_____

## ORDER DENYING CERTIFICATE OF APPEALABILITY[*]
_____

Before **TYMKOVICH**, **MATHESON**, and **McHUGH**, Circuit Judges.
_____

Joseph M. Jackson is a pro se Oklahoma inmate who seeks a certificate of

appealability (COA) to challenge the denial of his 28 U.S.C. § 2241 petition.  We deny a

COA and dismiss this matter.  We also deny Jackson's motion to appoint counsel.

I

Jackson is serving a life sentence with the possibility of parole for first-degree

murder.  He was convicted in 1983 and has been reviewed for parole seven times, but

each time, he has not progressed past parole-review.  He was most recently denied parole

under Oklahoma's aging-prisoner parole statute, which "empower[s]" the parole board to

---

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

grant parole to an inmate who is at least sixty years old and meets various criteria, including that he "[i]s not imprisoned for a crime enumerated in Section 13.1 of Title 21 of the Oklahoma Statutes or Section 571 of Title 57 of the Oklahoma Statutes." Okla. Stat. tit. 57, § 332.21. Both of these provisions list first-degree murder as an enumerated offense. *See* Okla. Stat. tit. 21, § 13.1; Okla. Stat. tit. 57, § 571. Jackson's application was denied because he is imprisoned for first-degree murder. *See* R. at 112-13.[1]

A magistrate judge liberally construed Jackson's § 2241 petition as claiming Oklahoma's aging-prisoner parole scheme violates: (1) his due process rights by denying him an in-person hearing; (2) the Eighth Amendment by failing to provide an opportunity for early release based on maturity and rehabilitation; (3) the Ex Post Facto Clause by retroactively designating first-degree murder as a violent crime; and (4) his equal protection rights by evaluating his parole eligibility dissimilarly from other inmates based solely on the violent nature of his offense. The magistrate judge rejected each claim and recommended that the petition be denied. Over Jackson's objections, the district court adopted the recommendation, denied the petition, and denied a COA.

## II

Jackson now seeks a COA to appeal the district court's order. *See* 28 U.S.C. § 2253(c)(1)(A); *Montez v. McKinna*, 208 F.3d 862, 869 (10th Cir. 2000) (applying

---

[1] It was also denied because "Applicant did not have the Records Officer at the DOC facility complete the Eligibility Section as per the directions." R. at 113.

§ 2253(c)(1)(A)'s COA requirement to § 2241 petitions filed by state prisoners). We may grant a COA only if he "demonstrate[s] that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).[2]

## A. Due Process

In his due process claim, Jackson challenges the denial of an in-person hearing. The district court, in adopting the magistrate judge's decision, rejected this claim, concluding that Oklahoma's parole scheme is discretionary, so an inmate has no protected liberty interest in parole or a personal appearance before the parole board. *See Shirley v. Chestnut*, 603 F.2d 805, 807 (10th Cir. 1979) (concluding that Oklahoma's discretionary parole scheme creates no liberty interest). Jackson contends that rule is inapposite because his case involves parole under the aging-prisoner statute, not a general parole statute. He does not explain, however, how the aging-prisoner statute creates a liberty interest that would entitle him to a hearing. "[A] state parole statute can create a liberty interest when the statute's language and structure sufficiently limits the discretion of a parole board." *Boutwell v. Keating*, 399 F.3d 1203, 1213 (10th Cir. 2005). But there

---

[2] Jackson quarrels with the district court's reference to *United States v. Garfinkle*, 261 F.3d 1030, 1031 (10th Cir. 2001), which the court cited for the general proposition that "theories raised for the first time in objections to the magistrate judge's report are deemed waived." Jackson suggests the district court cited *Garfinkle* to deem several of his claims waived, but we do not read the district court's decision as he does. Rather, we understand the district court's decision as addressing several specific objections and otherwise adopting wholesale the magistrate judge's report and recommendation, including its analysis of Jackson's substantive claims. *See* R. at 168 ("[T]he Report and Recommendation issued July 5, 2023 . . . is ADOPTED in its entirety.").

is no liberty interest created by a discretionary parole system. *See id.* The aging-prisoner statute merely "empower[s]" the parole board to parole a prisoner who meets its eligibility criteria, including that he is not imprisoned for an enumerated offense, as Jackson is. Okla. Stat. tit. 57, § 332.21. The statute also states that a prisoner who meets the statutory criteria "shall have the ability *to request* a parole hearing," and, once requested, the parole board "*may* place the prisoner on the next available docket." *Id.* § 332.21(D), (E) (emphasis added). But there is no mandatory language suggesting a liberty interest in either parole or an in-person hearing. *See Boutwell*, 399 F.3d at 1213 (explaining that mandatory language stating "an inmate 'shall' be paroled" can restrict the parole board's discretion to deny parole sufficient to create a liberty interest). The language of the aging-prisoner statute indicates the parole board's ability to grant parole to an inmate who meets the statutory criteria is discretionary; it thus falls under the general rule that the Oklahoma parole scheme creates no protected liberty interest. *See Shabazz v. Keating*, 977 P.2d 1089, 1093 (Okla. 1999) ("[T]here is no protectible liberty interest in an Oklahoma parole."). The denial of this claim is not reasonably debatable.[3]

### B. Eighth Amendment

Jackson's Eighth Amendment claim alleges the aging-prisoner parole system is unconstitutional because it fails to provide a meaningful opportunity for release based on

---

[3] Elsewhere in his COA application, Jackson questions how the aging-prisoner statute is discretionary if parole is denied based on his imprisonment for first-degree murder. *See* COA Appl. at 18-20. As set forth in our analysis, the statute restricts the board's discretion to *grant* parole to otherwise qualifying inmates, so long as they are not imprisoned for an enumerated offense. *See* Okla. Stat. tit. 57, § 332.21(A)(4).

4

a prisoner's maturity and rehabilitation. The district court denied this claim, reasoning that the Eighth Amendment is not violated when a lengthy prison term delays a prisoner's eligibility for parole. *See United States v. O'Driscoll*, 761 F.2d 589, 599 (10th Cir. 1985) ("A sentence of imprisonment for a very long term of years, the effect of which is to deny a prisoner eligibility for parole until a time beyond his life expectancy, does not violate the Eighth Amendment . . . ."). Jackson insists he must be afforded an opportunity for early release because "his brain was not fully developed when he committed his crime at age 24." COA Appl. at 16. He relies on unpublished authority recognizing the Eighth Amendment prohibits the imposition of mandatory life in prison without the possibility of parole for juvenile homicide offenders. *See Thomas v. Stitt*, No. 21-6011, 2022 WL 289661, at *2 (10th Cir. Feb. 1, 2022) (citing *Miller v. Alabama*, 567 U.S. 460, 479 (2012)). But Jackson was not a juvenile offender, and his sentence affords him the possibility of parole. He fails to show his lengthy sentence with the possibility of discretionary parole violates the Eighth Amendment. The denial of this claim is not reasonably debatable.

### C. Ex Post Facto

The Ex Post Facto Clause prohibits states from enacting retroactive parole statutes that increase a prisoner's sentence compared to the parole law in effect when the prisoner committed his crime. *See Garner v. Jones*, 529 U.S. 244, 249-50 (2000). There is no violation, however, if changes to parole laws "create[] only the most speculative and attenuated possibility of producing the prohibited effect of increasing the measure of punishment for covered crimes." *Id.* at 251 (internal quotation marks omitted).

Jackson claims the Ex Post Facto Clause prohibits the retroactive restrictions in the aging-prisoner statute for prisoners like himself who were convicted of enumerated violent offenses. *See* Okla. Stat. tit. 57, § 332.21(A)(4). But the possibility of these restrictions prolonging his sentence is merely speculative because, while the aging-prisoner statute empowers the board to grant parole to eligible offenders, the board has no authority to grant parole to offenders like Jackson whose crimes have been designated as violent; it can only recommend parole to the Governor. Okla. Const. art. VI, § 10. That has not changed since Jackson committed his offense. *See* Okla. Stat. tit. 57, § 322.7 (1981). Reasonable jurists would not debate the district court's denial of this claim.

### D. Equal Protection

For his equal protection challenge, Jackson claims the aging-prisoner statute's designation of his crime as violent reduces his eligibility for parole to a single criterion: the nature of his offense. He says other prisoners who did not commit the same offense are evaluated based on additional criteria, which violates his equal protection rights. The district court rejected this claim, noting Jackson made only conclusory allegations that he was denied parole based solely on the nature of his offense. The district court also determined he could not establish he was similarly situated to other inmates seeking parole, nor could he establish the parole board lacked a rational basis for denying parole to those deemed to be a risk to society. This decision is not reasonably debatable.

"[E]qual protection is essentially a direction that all persons similarly situated should be treated alike." *Straley v. Utah Bd. of Pardons*, 582 F.3d 1208, 1215 (10th Cir.

6

2009) (internal quotation marks omitted). Jackson's first problem is that he made only the conclusory statement that the aging-prisoner statute considers the single criterion that he committed a violent offense. That statement is unsupported by factual content, so it is not entitled to any presumption of truth. *See Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1219 (10th Cir. 2011). In fact, Jackson's own allegations contradict his statement because he also alleged the parole board relies on "risk assessment tools." R. at 19. And the statute itself describes a number of eligibility factors that are considered in weighing the possibility of parole, including the age of the prisoner, the duration of his sentence served, the severity of his risk to public safety, and whether he is imprisoned for enumerated offenses, among other things. *See* Okla. Stat. tit. 57, § 332.21.

Further, Jackson does not explain how he is similarly situated to other prisoners who committed different crimes. Nor does he explain how any alleged "distinction between himself and other inmates was not reasonably related to some legitimate penological purpose." *Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994). Jackson is imprisoned for first-degree murder, and under the discretionary parole scheme, the board is tasked with individually assessing inmates based on a host of considerations that could differ markedly in each inmate, including their individual risk of recidivism. The denial of this claim is not reasonably debatable.

### E.  Miscellaneous Arguments

#### a.  Parole Eligibility Certification

Jackson next offers several arguments disputing the denial of parole based on the board's conclusion that he failed to complete a certificate of eligibility.  *See* R. at 113 (denial notice indicating he failed to complete the parole eligibility section of his application); COA Appl. at 31-35 (challenging the denial of parole based on the failure to complete the eligibility certification and asserting the district court upheld that decision based on post hoc rationalizations).  It is unclear how these arguments are tethered to his claims, but to the extent they are, the district court concluded it was inconsequential that the board denied parole based on Jackson's failure to complete the eligibility certification because it also denied parole based on of his first-degree murder conviction.  *See* R. at 167-68.  Jackson does not address this rationale, thereby waiving the point.  *See Nixon v. City & Cnty. of Denver*, 784 F.3d 1364, 1369 (10th Cir. 2015) (holding an appellant must challenge the district court's rationale).

#### b.  Denial of Counsel

Jackson also contends the district court erred in denying his post-judgment motion for appointment of counsel.  He does not need a COA to appeal this decision.  *Harbison v. Bell*, 556 U.S. 180, 183 (2009).  However, he does need to have filed a timely notice of appeal within 30 days of the challenged order.  Fed. R. App. P. 4(a)(1)(A).  The district court entered judgment on December 29, 2023, and Jackson filed a timely notice of appeal from the underlying judgment on January 25, 2024.  That same day, he filed a motion to appoint counsel, which the district court denied on February 2, 2024.  Jackson

did not amend his notice of appeal.  Nonetheless, his COA application can serve as the functional equivalent of a notice of appeal.  *See Smith v. Barry*, 502 U.S. 244, 248-49 (1992); Fed. R. App. P. 3(c)(7).  To be the functional equivalent of a notice of appeal, a document must be filed within the time prescribed by Federal Rule of Appellate Procedure 4 and "giv[e] the notice required by [Federal Rule of Appellate Procedure 3]." *Smith*, 502 U.S. at 249.  Jackson's COA application met Rule 3's requirements because it was timely filed on February 26, 2024, within 30 days of the district court's order, it identifies Jackson as the party taking the appeal, it indicates he seeks to challenge the district court's denial of counsel, and it names this court as the court to which the appeal is taken.  *See* Fed. R. App. P. 3(c)(1).  We therefore consider the district court's ruling.

So long as an evidentiary hearing is not required, "[t]he decision to appoint counsel is left to the sound discretion of the district court." *Engberg v. Wyoming*, 265 F.3d 1109, 1122 & n.10 (10th Cir. 2001).  In deciding whether to appoint counsel, courts should consider "the merits of the litigant's claims, the nature of the factual issues raised in the claims, the litigant's ability to present his claims, and the complexity of the legal issues raised by the claims." *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995) (internal quotation marks omitted).  Jackson's claims are unavailing, they involve no factual issues, he has soundly presented them, and the issues they raise are not particularly complex.  The district court did not abuse its discretion in denying counsel.

9

*F. Appointment of Counsel on Appeal*

Finally, Jackson moves this court to appoint counsel. We denied a previous motion to appoint counsel shortly after Jackson filed his COA application, and we deny his current motion. Jackson has no right to counsel in these proceedings, *see Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987), and for the reasons set forth above, we see no need to appoint counsel.

## III

For the foregoing reasons, we deny a COA and dismiss this matter. We also deny Jackson's motion for appointment of counsel, but we grant his motion for leave to proceed without prepayment of costs and fees.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge