**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 24 1997**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DONALD RICHARD MAGHE,

      Plaintiff - Appellant,

v.

MIKE KOCH, Parole Board Investigator;
ROBERT FAULKNER, Parole Board
Administrative Officer, aka Bob Faulkner,

      Defendants - Appellees.

No. 96-7060

E.D. Oklahoma

(D.C. No. CV-93-809-S)

---

**ORDER AND JUDGMENT**[*]

---

Before **ANDERSON**, **HENRY**, and **BRISCOE**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34 (a); 10th Cir. R. 34.1.9. This cause is therefore ordered submitted without oral argument.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff Donald Richard Maghe, an inmate of the Oklahoma Department of Corrections, appeals the district court's order dismissing his 42 U.S.C. § 1983 complaint against Mike Koch and Bob Faulkner. Maghe claims that Koch, a parole investigator, submitted false and prejudicial information to the parole board and that Faulkner, Koch's supervisor, failed to expunge the information from Maghe's parole file. Maghe claims that although prison officials now have corrected or removed all of the alleged errors in his parole file, he is entitled to the following relief: (1) a declaration that the Defendants violated his due process rights by submitting the information and failing to correct the errors after being notified; (2) compensatory and punitive damages for these alleged constitutional violations; and (3) an order that the Defendants establish a procedure for correcting erroneous parole investigation reports. Because we hold that Maghe has no liberty interest in parole under Oklahoma's parole system, we affirm.

I. Background

In May of 1979, Maghe was committed to the Oklahoma Department of Corrections to serve a life sentence for first degree murder. Maghe was scheduled for his first pre-parole consideration in August of 1992. In preparation for his pre-parole consideration, Defendant Koch, a parole investigator, interviewed Maghe and prepared an investigative report (the 1992 report) which he submitted to the parole board members.

On August 19, 1992, the parole board reviewed Maghe's file, including the 1992 report, and denied him pre-parole.

On March 26, 1993, Maghe received a copy of the 1992 report. Soon thereafter, Maghe wrote a letter to Koch's supervisor, Defendant Faulkner, stating that the information in his 1992 report was "ninety per cent false." Faulkner wrote back to Maghe that he could not respond to his complaint until he was more specific about what aspects of the 1992 report were false. On May 13, 1993, Faulkner received another letter from Maghe specifically detailing the items in his 1992 report which he deemed incorrect and providing documentation to support some of the corrections he proposed. Some of the alleged errors that Maghe pointed out were: (1) that the report listed a felony conviction for automobile larceny with a sentence of fifteen years, although on appeal the sentence had been modified to seven and a half years; (2) that the report listed a felony conviction for driving while intoxicated with a sentence of three years, although on appeal the sentence had been modified to one year and the conviction to a misdemeanor; (3) that the report recounted what purported to be Maghe's version of the facts regarding the murder offense, although Maghe denied that he made such statements; and (4) that the report indicated that Maghe was dishonorably discharged from the military, although he in fact received an undesirable discharge.

On June 4, 1993, Faulkner wrote a letter in response to Maghe's detailed complaints about the 1992 report. Faulkner stated that because he was not present at the

interview between Koch and Maghe, he could not respond to Maghe's assertions about what was said. With regard to the complaints about Maghe's former convictions, Faulkner indicated that the modified sentences were not "reflected on the FBI rap sheet" and that Maghe "should request that this information be placed in Section 1 of [his] DOC field file, . . . that [his] FBI records be updated to reflect these rulings," and that he obtain help from the facility records officer to make these changes. Faulkner also indicated that the information which Maghe sent to him would be "kept in [his] parole file at this office."

Maghe was then docketed for parole consideration in September of 1993. By letter dated June 13, 1993, Maghe informed the parole board that he planned to challenge the information in the 1992 report in court and until such matter was resolved he waived his parole interview and personal appearance before the parole board. However, on July 8, 1993, Koch scheduled Maghe to be interviewed in preparation for his September 1993 parole consideration. On the interview schedule sheet, Koch indicated that if an inmate wished to waive his parole consideration, the inmate must contact him at the time scheduled for the interview. When Maghe did not show up for the parole interview or to indicate that he wished to waive parole consideration, Koch left him a note rescheduling the appointment and asking Maghe to contact him if another time was more convenient. Koch also informed Maghe that if he did not show up for the interview then he would "have no input to the parole summary." Maghe did not show for the rescheduled

- 4 -

interview or contact Koch to schedule a different time. Accordingly, Koch prepared the parole investigation report (the 1993 report) based on the information from the 1992 report, including the alleged errors, and submitted it to the parole board. After the September 1993 hearing, the board denied Maghe parole and on October 22, 1993, he filed this section 1983 action.

Maghe was docketed for a third parole consideration in September 1994. He again refused to be interviewed and Koch prepared the 1994 report based on the information in the 1992 and 1993 reports, again including the alleged errors, and submitted it to the parole board. The board denied Maghe parole. Thereafter, upon Maghe's request, he was assigned a new parole investigator, Ray Cantrell, who interviewed Maghe on May 17, 1995, in preparation for his 1995 parole consideration. During this interview, Maghe's first interview since June 12, 1992, Cantrell noted the modification of the fifteen year sentence to seven and a half years, moved the drunk driving conviction from the felony section to the substance review section of the report and noted the sentence modification to one year, removed the military discharge information from the report, and made changes to the section recounting Maghe's version of the murder offense. These changes were incorporated into the 1995 report. On June 14, 1995, the 1992, 1993, and 1994 reports, which contained the alleged errors, were removed from Maghe's files. The next day, after reviewing the 1995 report prepared by Cantrell, the parole board voted unanimously to deny Maghe parole.

II.  Discussion

Maghe claims that the Due Process Clause prohibits the parole board's use of false information in considering his application for parole, and requires Oklahoma to provide a process for correcting false information in an inmate's parole file.  It is "well-settled that the Due Process Clause shields from arbitrary or capricious deprivation those facets of a convicted criminal's existence that qualify as 'liberty interests.'"  Harper v. Young, 64 F.3d 563, 563 (10th Cir. 1995), cert. granted, 116 S. Ct. 1846 (U.S. May, 28, 1996) (No. 95-1598).  "The identification of the liberty interests that are protected by the Due Process Clause is a question of federal constitutional law that we review de novo."  Id. at 566.

Since 1979, an inmate's claim to due process in the parole context has been governed by Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1 (1979).  In Greenholtz, the Court concluded there is "no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence" and, thus, "there simply is no constitutional guarantee that all executive decisionmaking must comply with standards that assure error-free determinations."  Id. at 7; accord Board of Pardons v. Allen, 482 U.S. 369, 373 (1987); Connecticut Bd. of Pardons v. Dumschat, 452 U.S. 458, 464 (1981) (relying on Greenholtz in concluding that inmate has no "constitutional or inherent right" to commutation of prison sentence).  The Court further held that a discretionary state parole system which "holds out the possibility of parole provides no more than a mere hope that the benefit will be obtained" and,

accordingly, does not implicate the protections of due process. Greenholtz, 442 U.S. at 10; accord Dumschat, 452 U.S. at 465; Jago v. Van Curen, 454 U.S. 14, 21 (1981).

However, the Court determined that a liberty interest in parole is created when state law provides an expectancy of parole by limiting official discretion to deny parole. Greenholtz, 442 U.S. at 12. The Court found that Nebraska's parole system, which required the parole board to release an inmate unless one of four designated reasons was found to exist, sufficiently limited official discretion such that an inmate could expect release according to the parole scheme and was "entitled to some measure of constitutional protection." Id. The Court then concluded that the Nebraska procedure, which afforded the inmate an opportunity to be heard and, if parole was denied, informed the inmate why he did not qualify for parole, comported with due process.

Subsequent to Greenholtz the Supreme Court has considered other statutory schemes which afforded state parole boards discretion to grant parole under certain circumstances but did not require them to do so, and the Court held that such parole systems did not establish a liberty interest in parole implicating the protections of due process. See Jago, 454 U.S. at 14 (inmate had no right to hearing before parole board rescinded its decision to grant parole because inmate had no liberty interest in Ohio parole system which gave officials discretion in granting parole); Dumschat, 452 U.S. at 465 (inmates had no liberty interest in commutation because board had discretion in granting commutation); cf. Allen, 482 U.S. at 376 (inmates had liberty interest in parole based on

Montana statute which required parole board to release inmate if certain standards were met).

Applying the Greenholtz test, we, as well as Oklahoma, have held that Oklahoma's parole system does not create a liberty interest entitling an inmate to due process protections. Shirley v. Chestnut, 603 F.2d 805, 807 (10th Cir. 1979); Phillips v. Williams, 608 P.2d 1131, 1132 (Okla. 1980) (decision after remand from the United States Supreme Court to consider in light of Greenholtz); Kelly v. Oklahoma Pardon & Parole Bd., 637 P.2d 858, 858-59 (Okla. Crim. App. 1981).[1] Maghe does not claim that the Oklahoma parole system has been modified since Shirley such that it is no longer a discretionary system under Greenholtz. Because Maghe has no liberty interest in obtaining parole under the discretionary Oklahoma parole system, he may not invoke section 1983 as a basis for challenging the validity of information considered by the

_____

[1]It is not clear what, if any, impact Sandin v. Conner, __ U.S.__, 115 S. Ct. 2293 (1995), will have on the traditional Greenholtz analysis for evaluating inmate claims to due process relating to parole consideration and determinations. At least two circuits have determined that Sandin has no effect on parole cases. See Ellis v. District of Columbia, 84 F.3d 1413, 1417-18 (D.C. Cir. 1996) (discussing Sandin and concluding that Greenholtz applies until expressly overturned by the Court); Orellana v. Kyle, 65 F.3d 29, 32 (5th Cir. 1995) (holding that while potential for parole in some circumstances may be an incident of prison life qualifying as a liberty interest under Sandin because it affects the duration of confinement, inmate did not have a claim to due process under the Texas parole system because under the Greenholtz analysis the state did not confer a liberty interest in parole), cert. denied, 116 S. Ct. 736 (1996). In any event, because Sandin "markedly narrowed the ranges of circumstances that will give rise to state-created liberty interest," Harper, 64 F.3d at 564, we are convinced that Sandin cannot be interpreted to expand an inmate's entitlement to due process in the parole context any more than the Greenholtz test affords.

parole board or the adequacy of the process or lack of process for correcting the information.  See Orellana v. Kyle, 65 F.3d 29, 31-32 (5th Cir. 1995) (even though inmate complained that information relied on by parole board was "admittedly false," court held because inmate has "no liberty interest in obtaining parole . . ., he cannot complain of the constitutionality of procedural devices attendant to parole decisions");  see also Malek v. Haun, 26 F.3d 1013, 1016 (10th Cir. 1994) (The "Utah parole statute does not create a liberty interest . . . and thus cannot be used as a basis for relief under § 1983."); Shirley, 603 F.2d at 807 ("In the absence of such liberty interest [in parole], the specific due process procedures requested by the appellants are not applicable.").  But see Monroe v. Thigpen, 932 F.2d 1437, 1442 (11th Cir. 1991) (holding although Alabama parole statute did not confer a liberty interest in parole, parole board did not have "discretion to rely upon false information in determining whether to grant parole" and to do so violated due process).[2]

---

[2]Monroe is distinguishable from this case in any event because the record there revealed that the parole board "specifically relied" on "admittedly false" information in denying the inmate parole.  Monroe, 932 F.2d at 1441-43.  In the present case, there is no evidence that the parole board relied on the allegedly false information in denying Maghe parole, and the prison officials have already expunged or corrected all of the information which Maghe alleges was incorrect.

### III. Conclusion

For the foregoing reasons, the district court's order granting Defendants' second motion for summary judgment is AFFIRMED.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge