**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 13 2001**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

RICKEY D. HENDERSON,

      Petitioner - Appellant,

vs.

H.N. SCOTT, Sonny,

      Respondent - Appellee.

No. 00-6374

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. 00-CV-552-C)

---

Rickey D. Henderson, pro se.

---

Before **EBEL**, **KELLY**, and **LUCERO**, Circuit Judges.[*]

---

**KELLY**, Circuit Judge.

---

    [*] After examining the brief and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1 (G). The cause is therefore ordered submitted without oral argument.

Petitioner-Appellant Rickey D. Henderson seeks to appeal from the denial of his habeas corpus petition brought pursuant to 28 U.S.C. § 2254. Mr. Henderson claims that the Oklahoma Pardon and Parole Board decreased the frequency of his parole reconsideration dates in violation of the Ex Post Facto Clause of the United States Constitution. Mr. Henderson's petition concerns the execution of his sentence and under our precedent probably should be considered pursuant to 28 U.S.C. § 2241, rather than § 2254. Montez v. McKinna, 208 F.3d 862, 865 (10th Cir. 2000). Because we conclude that Mr. Henderson has not made a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), Slack v. McDaniel, 529 U.S. 473, 484 (2000), we deny a certificate of appealability [COA] and dismiss the appeal.

Background

In 1989, Mr. Henderson pleaded guilty in Oklahoma state court to two counts of kidnapping and one count of first-degree rape. He was sentenced to two ten-year terms on the kidnapping counts, and life imprisonment on the rape count, all to run concurrently. After initially being denied parole in December 1997, Mr. Henderson was informed by the Oklahoma Pardon and Parole Board that, pursuant to an amended state statute and according to Oklahoma Pardon and Parole Board policy, he would not be reconsidered for parole for five years. The amended

statute, which became effective in 1998, provides that anyone who was convicted of a violent crime and initially denied parole would not be reconsidered for parole for three years. Okla. Stat. Ann. tit. 57, § 332.7(D)(1) (West 1999).[1] In addition, the applicable parole board policy states that reconsideration dates for inmates denied parole may be deferred for a maximum of five years. Okla. Pardon & Parole Board, Policy & Procedures Manual, Policy 004(I)(B)(1)(a).[2] In his habeas petition, and again in his opening brief, Mr. Henderson claims that the statutory scheme in place when he committed the crimes entitled him to annual reconsideration for parole.

Mr. Henderson initially filed an application for post-conviction relief in Oklahoma state court, claiming that (1) the application of the amended statute was in violation of the Ex Post Facto Clause of the Constitution, and (2) he was denied the right to a parole reconsideration hearing despite having a liberty

---

[1] The statute provides, in pertinent part: "Except as otherwise directed by the Pardon and Parole Board, any person who has been considered for parole and was denied parole . . . shall not be reconsidered for parole . . . [w]ithin three (3) years, if the person was convicted of a violent crime . . . ." Okla. Stat. Ann. tit. 57, § 332.7(D)(1) (West 1999).

[2] The policy provides, in pertinent part: "Docket dates for inmates denied parole or commutation are set as follows: a. If denied by the Board on a regularly scheduled parole docket, one year from the month of denial, unless directed otherwise by majority vote. The Board may set off reconsideration for a maximum of five years." Okla. Pardon & Parole Board, Policy & Procedures Manual, Policy 004(I)(B)(1)(a).

interest in the hearing.[3]  The state district court rejected both arguments and dismissed the petition, and the Oklahoma Court of Criminal Appeals ("OCCA") affirmed.  R. Doc. 6, Exs. C & D.  Although we analyze Mr. Henderson's claim under § 2241, we still accord deference to the OCCA's determination of the federal constitutional issue.  Cf. 28 U.S.C. § 2254(e)(1); Williams v. Taylor, 529 U.S. 362, 412-413 (2000); Montez, 208 F.3d at 869 (discussing comity and deference concerns in the context of § 2241).

Having exhausted his state court remedies, Mr. Henderson filed his federal petition.  Upon the recommendation of a magistrate judge, the district court dismissed the petition, finding that the statutory amendment was not violative of the prohibition against ex post facto laws.  Mr. Henderson argues that a remand to the district court for findings of fact and conclusions of law is required, and that the amended statute, both on its face and as applied to his case, violates the Ex Post Facto Clause of the Constitution.

## Discussion

Mr. Henderson's claim that this case should be remanded to allow proper findings of fact and conclusions of law is without merit.  The magistrate judge's

---

[3]  Mr. Henderson's liberty interest claim was only brought in state court. He did not claim a liberty interest in the federal habeas petition.  Therefore it is not before this court.

Report and Recommendation ("R & R") outlines the facts and the law in this case. R. Doc. 8. The district court conducted the necessary de novo review on undisputed facts, 28 U.S.C. § 636(b)(1), and adopted the R & R. R. Doc. 10, at 2. As we are dealing with legal questions, our review is de novo. Remanding this case to allow additional findings of fact and conclusions of law is unnecessary.

The United States Constitution prohibits the States from passing any "ex post facto Law." U.S. Const. art. I, § 10, ¶ 1. This Clause "is aimed at laws that retroactively alter the definition of crimes or increase the punishment for criminal acts." Cal. Dep't of Corr. v. Morales, 514 U.S. 499, 504 (1995) (internal quotations and citations omitted). Two critical elements must be present for a law to fall within the ex post facto prohibition: "first, the law must be retrospective, that is, it must apply to events occurring before its enactment; and second, it must disadvantage the offender affected by it." Miller v. Florida, 482 U.S. 423, 430 (1987) (internal quotations and citations omitted).

The Supreme Court has rejected the argument "that the Ex Post Facto Clause forbids any legislative change that has any conceivable risk of affecting a prisoner's punishment." Morales, 514 U.S. at 508. The Ex Post Facto Clause was never intended to result in judicial "micromanagement of an endless array of legislative adjustments to parole and sentencing procedures . . . ." Id. Instead, the Court has consistently held that "the question of what legislative adjustments

- 5 -

will be held to be of sufficient moment to transgress the constitutional prohibition *must* be a matter of degree." Id. at 509 (internal quotations and citations omitted, emphasis in original). "Retroactive changes in laws governing parole of prisoners, in some instances, may be violative" of the prohibition against ex post facto laws, Garner v. Jones, 529 U.S. 244, 250 (2000), but the controlling inquiry is not whether the law is retroactive, but "whether it produces a sufficient risk of increasing the measure of punishment attached to the covered crimes." Morales, 514 U.S. at 509 (footnote omitted); see also Lynce v. Mathis, 519 U.S. 433, 444 (1997). When the amendment creates only "the most speculative and attenuated possibility" of increasing the measure of punishment, it is "insufficient under any threshold" to violate the Ex Post Facto Clause. Morales, 514 U.S. at 509.

While the Supreme Court has not set forth any single formula for identifying whether a specific law violates the ex post facto prohibition, the Morales Court did identify several factors to be considered in making such a determination. At issue in Morales was a California statute that, similar to the Oklahoma statute in question here, decreased the frequency of parole reconsideration hearings for prisoners. Id. at 501-02. The Supreme Court held that the California law did not violate the ex post facto prohibition because: (1) the statute applied to a class of prisoners for whom "the likelihood of release on parole [was] quite remote," id. at 510; (2) the amendment did not affect the

timing of any prisoner's initial parole hearing, only the timing of reconsideration hearings, id. at 511; and (3) the parole board retained "the authority to tailor the frequency of subsequent hearings [] to the particular circumstances of [an] individual prisoner." Id.

More recently, in Garner v. Jones, the Supreme Court again addressed this issue, this time in the context of a Georgia statute that decreased the frequency of parole consideration hearings. 529 U.S. at 246. The Court viewed the statute's operation within the whole context of the Georgia parole system and found that the statute, on its face, did not violate the ex post facto prohibition because: (1) the parole board had "discretion as to how often to set an inmate's date for reconsideration," and (2) the statute permitted expedited parole reviews to consider a change in circumstances or new information. Id. at 254. The Court nonetheless reversed the dismissal of the ex post facto claim to allow the inmate the chance to show that despite the failure of his facial challenge, the statute was unconstitutional as applied to him. Id. at 257. "When the rule does not by its own terms show a significant risk, the [petitioner] must demonstrate, by evidence drawn from the rule's practical implementation . . . , that its retroactive application will result in a longer period of incarceration than under the earlier rule." Id. at 255.

A.    Facial Challenge to the Amended Statute

When viewed within the whole context of Oklahoma's parole regulations, the statute at issue in this case does not facially increase the likelihood of punishment. First, it does not change the length of the sentence in any way. Second, it does not affect the timing of the initial parole consideration, only of subsequent parole consideration dates. Cf. Morales, 514 U.S. at 511 (noting that the California statute did not affect the initial parole consideration date). Third, the amended statute provides that reconsideration cannot occur within three years of the previous denial unless "otherwise directed by the Pardon and Parole Board . . . ." Okla. Stat. Ann. tit. 57, § 332.7(D) (West 1999). This language clearly reserves the Board's discretion to reconsider parole before the three-year period has expired. Cf. Garner, 529 U.S. at 254 (considering the parole board's discretion to determine how often to set parole reconsideration dates). Fourth, Policy 004 of the Oklahoma Pardon and Parole Board Policy & Procedures Manual indicates that the Board has the authority to defer reconsideration for up to five years, but that it can modify parole consideration dates if the Board receives new information. Cf. id. (considering the parole board's discretion to expedite parole reviews to consider new information).

Taken together, these factors indicate that under the Oklahoma parole system, inmates are not subject to a longer punishment because of the amended

- 8 -

statute. The amendment only allows less frequent parole reconsideration dates in situations where the Parole Board determines that more frequent reconsideration is unnecessary. This is insufficient to violate the ex post facto prohibition.

B.    As Applied Challenge to the Amended Statute

Although the statute is not violative of the ex post facto prohibition on its face, Mr. Henderson could still prevail upon a showing that its application in his case would result in a significant risk of a longer period of incarceration. While Mr. Henderson claims that this case should be remanded to allow him to demonstrate the risk of increased punishment, he has not shown that his circumstances have changed sufficiently in light of his convictions and sentences to warrant an earlier parole consideration date. Cf., e.g., Raymer v. Enright, 113 F.3d 172, 175-76 (10th Cir. 1997) (upholding Colorado amendment decreasing frequency of parole consideration as applied to inmate convicted of first-degree murder and sentenced to two concurrent terms of ten years to life); Crump v. Kansas, 143 F. Supp. 2d 1256, 1265-66 (D. Kan. 2001) (upholding Kansas amendment as applied to inmate convicted of serious crimes, including multiple murders and arson). Accordingly, it is only remote speculation to suggest that the application of the amended statute in Mr. Henderson's case will increase his punishment, and we must disagree with his claim that he has shown otherwise. Aplt. Br. at 5. Moreover, any evidence he might produce that may indicate that

he will be eligible for a parole recommendation before his reconsideration date should first be brought before the Parole Board. The procedures are in place for the Parole Board, at its discretion, to consider his parole at any time. See Okla. Pardon & Parole Board, Policy & Procedures Manual, Policy 004.[4]

In sum, Mr. Henderson has not shown that the Oklahoma statute, as amended, will have the effect of prolonging his punishment either on the face of the statute or as applied to his specific circumstances. Absent this showing, the statute does not violate the Ex Post Facto Clause, and his claim must fail.

The cases cited by Mr. Henderson in support of his argument to remand to allow him the opportunity to show the risk of increased punishment are readily distinguished. Those cases were remanded because the courts had failed to consider the effects of the parole reconsideration statutes on the petitioners' specific circumstances. See, e.g., Garner, 529 U.S. at 257 (remanding to Eleventh Circuit because the court of appeals failed to consider the specific effects of the parole reconsideration statute); Harris v. Hammonds, 217 F.3d 1346, 1350 (11th Cir. 2000) (remanding to district court to allow petitioner the opportunity to show a risk of increased punishment in his circumstances). Here, Mr. Henderson has had the opportunity to show an increased risk of punishment and has not. A

---

[4] Specifically section (I)(C) of Policy 004 provides, in pertinent part: "The Pardon and Parole Board may modify parole consideration dates including, but not limited to, the following circumstances: 1. Receipt of new information."

remand is unnecessary.

CERTIFICATE OF APPEALABILITY DENIED; APPEAL DISMISSED.