**F I L E D**

**UNITED STATES COURT OF APPEALS**

**July 3, 2007**

**TENTH CIRCUIT**

BILL HUNTER,

Petitioner-Appellant,

v.

STEVE BECK, Warden,

Respondent-Appellee.

No. 07-7027

(E.D. of Okla.)

(D.C. No. CV-06-173-RAW)

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

Before **HENRY**, **TYMKOVICH**, and **HOLMES**, Circuit Judges.[**]

Bill Hunter seeks habeas relief under 28 U.S.C. § 2241 from his incarceration at the Mack Alford Correctional Center in Stringtown, Oklahoma. State prisoners must first obtain a certificate of appealability (COA) to appeal the denial of a habeas petition pursuant to § 2241. *See Montez v. McKinna*, 208 F.3d

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

862, 867 (10th Cir. 2000).  The district court denied habeas relief and declined to issue a COA.  10th Cir. R. 22.1(C).  Hunter requests this court grant him COA.

As a *pro se* appellant, we construe Hunter's pleadings liberally.  *Cummings v. Evans*, 161 F.3d 610, 613 (10th Cir. 1998).  We will issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  Finding that Hunter has not satisfied this standard, we DENY his request for a COA and DENY his petition for habeas relief.

## I.  Background

Hunter raises four claims in seeking COA:  (1) he asserts that he has served his sentence because the 1997 Truth in Sentencing Matrix defined First Degree Murder to be no less than 18 years and no more than 60 years, with credit for good time; (2) he suggests the lack of appeal process from the parole process and the failure of the Parole Board to recommend for or against parole to the governor violate due process; (3) he argues the Parole Board has illegally refused to grant him annual parole hearings in violation of due process and the prohibition on ex post facto laws; and (4) he finally argues that the district court ignored a number of pending motions before it, including his motion for appointment of counsel based on the inadequacy of the legal tools available to him in prison and his disabled status under the Americans with Disabilities Act (ADA).[1]

_____

[1] In addition to suggesting the ADA requires appointment of counsel, discussed *infra*, Hunter suggests that the ADA also means his motion for COA

(continued...)

## II. Analysis

"On habeas review, this court does not address issues that have been defaulted in state court on an independent and adequate state procedural ground, unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice." *Anderson v. Sirmons*, 476 F.3d 1131, 1140 (10th Cir. 2007). In this case, Hunter failed to comply with an Oklahoma state procedural rule that required him to bring his Truth in Sentencing claim during an earlier 1999 proceeding, which he initiated.[2] Hunter has not argued the procedural rule is inadequate. He has not demonstrated cause "that cannot fairly be attributed to him." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991). And he has not shown a

---

[1](...continued)
should be granted. He then cites to several cases where ADA appeals were taken forward. None of these cases involved a habeas motion or request for COA under the strictures of the Antiterrorism and Effective Death Penalty Act (AEDPA). We do not grant COA on the basis of a petitioner's disabled status, we grant COA based on the denial of a constitutional right.

[2] Hunter was released on parole in 1987, but his parole was revoked on February 7, 1996. On June 29, 1999, Hunter challenged that revocation by filing an application for post-conviction relief, in which he only challenged the lawfulness of his parole revocation. The federal district court below disposed of Hunter's first claim in the present action for the same reasons that the Oklahoma Criminal Court of Appeals and the Choctaw County District Court denied the claim. Besides the fact that the Truth in Sentencing Act and its Matrix were repealed by the Oklahoma legislature before they went into effect, Hunter should have brought any claims created by the 1997 Act when he filed his 1999 application for post-conviction relief. By failing to bring the claim at that time, state law procedurally barred consideration of the claim in a subsequent post-conviction proceeding. Okla. Stat. tit. 22, § 1086.

fundamental miscarriage of justice will occur by compliance with the procedural rule.[3]  Therefore, COA is denied on the first claim.

Hunter next challenges, under due process, the Parole Board's refusal to send its recommendation denying parole to the governor and the lack of an appeals process for denials by the parole board.  "The Due Process Clause applies when government action deprives a person of liberty or property."  *Malek v. Haun*, 26 F.3d 1013, 1015 (10th Cir. 1994) (citations and quotations omitted).  "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies."  *Estate of DiMarco v. Wyo. Dep't of Corr.*, 473 F.3d 1334, 1339 (10th Cir. 2007) (citations and quotations omitted).

No constitutional or otherwise inherent right to parole exists before expiration of a sentence, so we must find any existing liberty interest in the state statutes governing Oklahoma parole.  *Malek*, 26 F.3d at 1015.  As we noted in *Shirley v. Chestnut*, 603 F.2d 805, 806 (10th Cir. 1979) (quoting *Greenholtz v. Nebraska Penal & Correctional Complex*, 442 U.S. 1, 12 (1979)), the question of whether a state parole statute has created an expectation of release such that a liberty interest has been created is one that must be answered on a case-by-case basis.  Where the state statute leaves the parole decision to the discretion of the

---

[3] A fundamental miscarriage of justice exists only in rare instances where "a constitutional violation" has probably led to "the conviction of one innocent of [a] crime."  *Gilbert v. Scott*, 941 F.2d 1065, 1068 n.2 (10th Cir. 1991).

parole board, no expectations of freedom from imprisonment can arise and no liberty interest has been created. *See Malek*, 26 F.3d at 1015–16.

After finding Oklahoma's parole system discretionary in *Shirley v. Chestnut*, we have upheld that determination over the years in several unpublished decisions. *See, e.g., Maghe v. Koch*, 107 F.3d 21 (10th Cir. 1997), *Brooks v. Oklahoma Pardon & Parole Bd.*, 13 F.3d 404 (10th Cir. 1993). Nothing has changed to alter this analysis. First of all, no amendments to the Oklahoma Code have occurred that change the discretionary nature of Oklahoma's parole system. Secondly, the state constitution only requires the Parole Board to impartially study parole applications and make its recommendation to the governor by majority vote. Okla. Const. art. VI, § 10.

Third, while the Oklahoma Code appears to require the Parole Board to make an advisory recommendation to the governor, Okla. Stat. tit. 57, § 332.2, the Code elsewhere makes clear that an application need only be forwarded on to the governor if approved because "[i]f an application for pardon is not approved by the Pardon and Parole Board, the application for pardon shall be deemed denied." Okla. Stat. tit. 57, § 332.19.[4] While the statute and the state constitution prohibit the Oklahoma Parole Board from granting parole to certain prisoners, *see* Okla. Const. art. VI, § 10 (removing consideration for those sentenced to death or life

---

[4] Even if the Parole Board is mandated to follow a certain procedure in its parole review, as we explain *infra*, the expectation of receiving a particular process is not protected in and of itself by due process.

without parole) and Okla. Stat. tit. 57, § 332.7(G), there are no statutorily mandated grants of parole. Lacking a statutory entitlement to parole, the Oklahoma state system did not create an expectation of liberty via parole. "That the state holds out the possibility of parole provides no more than a mere hope that the benefit will be obtained" and mere hope for liberty "is not protected by due process." *Greenholtz*, 442 U.S. at 11. Without an expectation of liberty created by the state, no process is due and the Parole Board may choose to handle its recommendations to the governor and appeals or lack thereof as it sees fit without violating due process.

Next, Hunter contends the shift from an annual parole hearing to a parole hearing every three years denied him due process and violates the ex post facto laws. The current statutory language mandates processes that might give Hunter legitimate expectations in receiving a hearing[5]—prisoners "shall be eligible for consideration for parole" when certain conditions are met, Okla. Stat. tit. 57, § 332.7(A); once those conditions are met, the potential parolee "shall be

_____

[5] The shift in parole hearings from one year to three years was passed by the Oklahoma legislature in 1998. According to Okla. Stat. tit. 57, § 332.7(D)(1), a prisoner denied parole cannot be considered for parole again until three years have passed, if the person was convicted of a violent crime under Okla. Stat. tit. 57 § 571. Hunter's crime of first-degree murder is a violent crime under the statute and according to his statement of facts, he was denied parole in 2007. Petitioner's Brief at 2. For the sake of argument, we assume Hunter had an expectation of annual parole hearings prior to the 1998 amendments, which shifted hearings to every three years, as the record does not make clear whether this is in fact the case.

considered at the earliest such date" Okla. Stat. tit. 57, § 332.7(D)—but "an expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause." *Olim v. Wakinekona*, 461 U.S. 238, 251 n.12 (1983). As the Supreme Court explained in *Olim*, "a liberty interest is . . . a substantive interest of an individual; it cannot be the right to demand needless formality. Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." 461 U.S. at 250 (citations and quotations omitted). There are no liberty interests in the process itself, so Hunter cannot claim due process rights were violated by changing the parole procedures absent an established liberty interest in parole itself, which we already established above does not exist here. As for Hunter's ex post facto claims against the elimination of annual review, we rejected a similar challenge to the Oklahoma statute challenged here in *Henderson v. Scott*, 260 F.3d 1213 (10th Cir. 2001).

Finally, Hunter challenges the district court's determination that the rest of his motions were moot. We agree with the district court's dismissal of the remainder of Hunter's motions, but take a moment to address the one motion specifically briefed by Hunter. He claims the district court should have granted his motion for the appointment of counsel and seems to argue that the ADA requires counsel be provided for him. In this circuit, "the district court has broad discretion to appoint counsel for indigents . . . and its denial of counsel will not

be overturned unless it would result in fundamental unfairness impinging on due process rights." *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991). We find no due process violations here, nor any factual support in the record for petitioner's claim that he is disabled, nor any support for the proposition the ADA requires us to appoint counsel if Hunter is in fact disabled. Hunter's own cogent and well-argued brief and motion for COA demonstrate his independent capability of petitioning this court with the resources available to him.

Accordingly, we DENY Hunter's petition for habeas and DENY his petition for COA, finding that no constitutional rights were denied.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge