**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 29, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

LARRY DON WESLEY MAYNARD,

Plaintiff-Appellant,

v.

GOVERNOR MARY FALLIN;
ROBERT PATTON;* TERRY JENKS;
DR. MARC DREYER; LYNNELL
HARKINS; CURRIE BALLARD;
DAVID MOORE; STATE OF
OKLAHOMA,

Defendants-Appellees.

No. 13-6239
(D.C. No. 5:13-CV-00972-W)
(W.D. Okla.)

**ORDER AND JUDGMENT****

Before **KELLY**, **HOLMES**, and **MATHESON**, Circuit Judges.

---

&#42;      Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Robert Patton, the current Director of the Oklahoma Department of Corrections ("ODOC"), is automatically substituted as Defendant in this case.

&#42;&#42;      After examining the briefs and appellate record, this panel has decided unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

      This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

Larry Dawn Wesley Maynard, an Oklahoma state prisoner proceeding pro se,[1] appeals from the district court's dismissal of his complaint against Governor Mary Fallin, ODOC Director Robert Patton, several members of Oklahoma's Pardon and Parole Board ("the Board"), and the State of Oklahoma (hereinafter, collectively, "Defendants"), wherein he alleged violations under 42 U.S.C. § 1983 and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132. Exercising jurisdiction under 28 U.S.C. § 1291, we **affirm** the district court's dimissal order, but **remand** the case for the court to amend the judgment to dismiss the case with prejudice, and **dismiss** Mr. Maynard's application for a certificate of appealability ("COA").

## I

Following a 1991 jury trial, Mr. Maynard was convicted of shooting with intent to kill in Osage County, Oklahoma. *See Maynard v. Boone*, 468 F.3d 665, 667–68 (10th Cir. 2006) (noting Mr. Maynard's "life sentence . . . arising from a crime that occurred in 1988"). He has been incarcerated within the ODOC at all times relevant to this action. Mr. Maynard professes to suffer from "sever[e]" mental illness. Aplt. Combined Br. at 8; *see Maynard*, 468 F.3d at 678 (noting in collateral proceeding that "[the] case [was] especially difficult because of Maynard's history of mental illness").

---

[1] Because Mr. Maynard appears pro se, we afford his filings a liberal construction. *See Garza v. Davis*, 596 F.3d 1198, 1201 n.2 (10th Cir. 2010); *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

When Mr. Maynard was convicted, Oklahoma's Forgotten Man Act obliged the Board to consider "every inmate . . . for parole on or before the expiration of one-third of his maximum sentence." *Shirley v. Chestnut*, 603 F.2d 805, 806 (10th Cir. 1979) (per curiam). The Oklahoma legislature repealed that statute in 1997 and replaced it with the Truth in Sentencing Act, which provides that "[f]or a crime committed prior to July 1, 1998, any person in the custody of the [ODOC] shall be eligible for consideration for parole . . . [when he has] completed serving one-third (1/3) of the sentence." Okla. Stat. tit. 57, § 332.7(A)(1). "Thereafter the person shall not be considered more frequently than once every three (3) years . . . ." *Id.* § 332.7(D)(2); *see Traylor v. Jenks*, 223 F. App'x 789, 790 (10th Cir. 2007) ("Under [§ 332.7], a person who committed a violent crime before July 1, 1998, and has been denied parole, is eligible for reconsideration at least once every three years."). A prisoner generally receives "jacket review," *see, e.g.*, *Taylor v. Hargett*, 203 F.3d 836, 2000 WL 135172, at *1 (10th Cir. 2000) (per curiam) (unpublished) (internal quotation marks omitted), rather than an in-person hearing, when the Board reconsiders his application for parole.

Mr. Maynard voiced his displeasure with § 332.7 on September 10, 2013, by filing a § 1983 action in the Western District of Oklahoma, seeking damages and prospective injunctive relief.[2] He specifically alleged in his complaint that:

---

[2] Although the caption of Mr. Maynard's complaint does not specify the capacity in which he sues Defendants, the body of the document evinces his

(continued...)

3

(1) § 332.7 violates the Ex Post Facto Clauses of the United States and Oklahoma

Constitutions;[3] (2) in enforcing § 332.7, Defendants violated his rights under the

ADA; and (3) Defendants conspired to apply § 332.7 to deny him an annual

"personal appearance" before the Board.  R. at 21 (Supporting Br. to Compl.,

filed Sept. 10, 2013) (capitalization altered).

On initial screening pursuant to 28 U.S.C. § 1915A(a), a magistrate judge

issued a report and recommendation, advising that the complaint should be

dismissed without prejudice because Mr. Maynard had stated no actionable

---

[2](...continued)
intent to (1) sue Defendants individually for damages, and (2) obtain injunctive relief against Defendants in their official capacities.  Both avenues are permissible under these circumstances.  *See Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) ("[O]fficials may be liable in their individual capacities for damages."); *Branson Sch. Dist. RE-82 v. Romer*, 161 F.3d 619, 631 (10th Cir. 1998) ("[A] suit against a state official in his or her official capacity seeking prospective injunctive relief is not . . . against the state for Eleventh Amendment purposes.").  However, our agreement with the district court's finding of no underlying constitutional violation makes clear that Mr. Maynard is entitled to no such relief.

[3]      The wording of the federal and state Ex Post Facto Clauses is "nearly identical."  *Starkey v. Okla. Dep't of Corr.*, 305 P.3d 1004, 1021 (Okla. 2013).  As a result, the Oklahoma courts typically interpret their state clause "consistent with federal jurisprudence" construing the cognate clause in the U.S. Constitution.  *See, e.g.*, *Murphy v. State*, 281 P.3d 1283, 1294 (Okla. Crim. App. 2012).  And while it is true that the Oklahoma judiciary is not *prevented* from interpreting its clause more broadly than the federal version, *see Starkey*, 305 P.3d at 1021, we are not aware of any Oklahoma authority construing the state's ex post facto clause in a more expansive fashion as relevant here—more specifically, such that it would provide Mr. Maynard with relief where the federal Constitution does not.  Thus, insofar as Mr. Maynard's complaint can be construed as asserting a supplemental state-law claim, the reasoning set forth below applies to it, and that claim, too, warrants dismissal.

claims. The district court adopted the findings articulated in the magistrate judge's screening recommendation (over Mr. Maynard's objection), denied Mr. Maynard's motion to disqualify judges in the Western District of Oklahoma, and dismissed the complaint without prejudice.

Mr. Maynard subsequently filed a motion to amend the complaint and a second motion to disqualify the magistrate and district judges. After the district court denied both motions, Mr. Maynard contemporaneously filed his notice of appeal and sought a COA from the district court. Noting that no COA was necessary to appeal from the dismissal of Mr. Maynard's complaint, the district court declined to issue a COA. Mr. Maynard renews his request for a COA in our court.

**II**

**A**

The sufficiency of a complaint under 28 U.S.C. § 1915A is a legal question reviewed de novo. *See Young v. Davis*, 554 F.3d 1254, 1256 (10th Cir. 2009). As we must when reviewing any dismissal of a complaint, we "accept as true all well-pleaded facts, as distinguished from conclusory allegations, and view those facts in the light most favorable to the nonmoving party." *Moya v. Schollenbarger*, 465 F.3d 444, 455 (10th Cir. 2006) (internal quotation marks omitted). Where applicable, "we will take the allegations in [the] plaintiff's objections to the magistrate's report as true." *Dunn v. White*, 880 F.2d 1188,

5

1190 (10th Cir. 1989) (per curiam); *accord McBride v. Deer*, 240 F.3d 1287, 1289 (10th Cir. 2001).

Any plaintiff must allege facts sufficient to make his claims facially plausible; that is, to avoid dismissal he must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). We hold a pro se plaintiff's pleadings "to a less stringent standard than formal pleadings drafted by lawyers," *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (internal quotation marks omitted), and if we "can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, [we] do so," *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). By the same token, we provide reasonable opportunities for pro se litigants to cure defects in their pleadings. *See Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990); *see also Heard v. Addison*, 728 F.3d 1170, 1186 n.8 (10th Cir. 2013) (noting in the habeas context that "we give pro se petitioners the benefit of the doubt").

At the same time, "the court should not assume the role of advocate, and should dismiss claims which are supported only by vague and conclusory allegations." *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1188 (10th Cir. 2003) (internal quotation marks omitted); *see also McBride*, 240 F.3d at 1290 (noting that "the [general] pleading hurdle is not automatically overcome" for pro se litigants); *Hall*, 935 F.2d at 1110 (noting our obligation to "accept as true *only* the

6

plaintiff's well-pleaded factual contentions" (emphasis added)).  It is not our office to supply additional facts or legal theories for a plaintiff's benefit.  *See Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009); *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997).  And, "where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend," we will uphold the dismissal of his complaint. *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 806 (10th Cir. 1999).

A plaintiff bringing a § 1983 claim must "allege the violation of a right secured by the Constitution and laws of the United States, and . . . that the alleged deprivation was committed by a person acting under color of state law." *Bruner v. Baker*, 506 F.3d 1021, 1025–26 (10th Cir. 2007) (internal quotation marks omitted).  Where, as here, the plaintiff names numerous defendants, his complaint must "make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims." *Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1250 (10th Cir. 2008).  The plaintiff must also allege a causal connection—i.e., that the defendants "set in motion a series of events that caused the constitutional violation." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 779 (10th Cir. 2013) (internal quotation marks omitted).

**B**

In his complaint, Mr. Maynard asserted the following three claims for relief concerning § 332.7: (1) an Ex Post Facto Clause challenge; (2) a violation of the ADA; and (3) a conspiracy claim. We address each in turn.

**1**

Mr. Maynard first claims that § 332.7 is an impermissible ex post facto law on its face and as applied to his case. Under the Ex Post Facto Clause, "[l]egislatures may not retroactively alter the definition of crimes or increase the punishment for criminal acts." *Gilson v. Sirmons*, 520 F.3d 1196, 1228 (10th Cir. 2008) (internal quotation marks omitted). The crux of our ex post facto inquiry is "whether [the law] constitutes additional criminal punishment for the crimes previously committed by those subject to its provisions," *Femedeer v. Haun*, 227 F.3d 1244, 1248 (10th Cir. 2000), not "whether a legislative change produces some ambiguous sort of disadvantage" to the defendant, *Barnes v. Scott*, 201 F.3d 1292, 1294 (10th Cir. 2000) (internal quotation marks omitted).

As is relevant here, Mr. Maynard contends that § 332.7 violates the Ex Post Facto Clause because (1) he did not receive what he believed was an entitlement to appear personally before the Board; and (2) the Board "discriminated against" him by "refus[ing] to give him" a "personal appearance hearing."[4] Aplt.

---

[4] Mr. Maynard neglected to raise discrimination as a theory of relief supporting his ex post facto challenge in the district court. He does not argue for

(continued...)

8

Combined Br. at 4 (capitalization altered). Our review of this claim leads us to conclude that Mr. Maynard wishes to proceed as if the Forgotten Man Act remains the governing law—but, to state the obvious, it does not. Reduced to its essence, then, Mr. Maynard's argument is the same for his facial and as-applied challenges: he personally disagrees with § 332.7 and believes (with no legal basis) that the statute runs afoul of the Constitution. But Mr. Maynard's views do not cast doubt on our own determination over ten years ago that § 332.7 *does not violate* the Ex Post Facto Clause. *See Henderson v. Scott*, 260 F.3d 1213, 1216–17 (10th Cir. 2001).

In *Henderson*, we rejected a habeas petitioner's facial and as-applied attacks on the substance of § 332.7. Examining the statute on its face, we concluded that § 332.7, "[w]hen viewed within the whole context of Oklahoma's parole regulations, . . . does not facially increase the likelihood of punishment." *Id.* at 1216. Our reasoning, detailed below, explains why Mr. Maynard cannot successfully cast this statute as one facially implicating the Ex Post Facto Clause.

---

[4](...continued)
plain-error review of this argument on appeal, and we therefore do not address it. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130–31 (10th Cir. 2011) (noting that a forfeited legal theory "may form a basis for reversal only if the appellant can satisfy the elements of the plain error standard of review" and that "failure to argue for plain error . . . surely marks the end of the road for an argument for reversal not first presented to the district court" (emphasis omitted)).

9

First, [§ 332.7] does not change the length of the sentence in any way. Second, it does not affect the timing of the initial parole consideration, only of subsequent parole consideration dates. Third, the amended statute provides that reconsideration cannot occur within three years of the previous denial unless otherwise directed by the Pardon and Parole Board[.] This language clearly reserves the Board's discretion to reconsider parole . . . . Fourth, . . . the Board has the authority to defer reconsideration for up to five years, but . . . it can modify parole consideration dates if the Board receives new information.

*Taken together, these factors indicate that under the Oklahoma parole system, inmates are not subject to a longer punishment because of the amended statute.* The amendment only allows less frequent parole reconsideration dates in situations where the Parole Board determines that more frequent reconsideration is unnecessary. *This is insufficient to violate the ex post facto prohibition.*

*Id.* at 1216–17 (emphases added) (citations omitted) (internal quotation marks omitted). Thus, we need not look beyond our own binding precedent to conclude that Mr. Maynard has failed to state a cognizable facial challenge to the validity of § 332.7.

We likewise reject Mr. Maynard's as-applied challenge to the statute for substantially the same reasons stated by the *Henderson* court. Like the prisoner in *Henderson*, Mr. Maynard merely offers "remote speculation to suggest that the application of the amended statute in [his] case will increase his punishment." *Id.* at 1217. That is, Mr. Maynard has not shown that § 332.7 poses a significant risk that *he* will face a longer sentence or that the statute retroactively deprived him of an *actual* right to appear personally before the Board. He concedes that he is not

10

arguing *for parole* and, as best we can tell, insists only that he is entitled to "know what his short falls are." Aplt. Combined Br. at 6.

In other words, Mr. Maynard does not address the length of his sentence here, and he did not so in the district court (where instead he vaguely disputed the State's purported failure to keep him in a mental-health facility). Additionally, at no time during the proceedings has he demonstrated any changed circumstances showing his entitlement to parole or that a change to his reconsideration dates would somehow become critically important. Indeed, as we stated in *Henderson*, "any evidence [a prisoner] might produce that may indicate that he will be eligible for a parole recommendation before his reconsideration date should first be brought before the [Board]." 260 F.3d at 1217; *see id.* (citing Okla. Pardon & Parole Bd., Policy & Procedures Manual, Policy 004, for the proposition that "[t]he procedures are in place for the [Board], at its discretion, to consider [a prisoner's] parole at any time").

Equally problematic for Mr. Maynard is that he has no constitutionally protected right to an annual parole hearing. As our case law makes clear, "[p]arole [itself] is a privilege; there is no constitutional or inherent right to parole." *Lustgarden v. Gunter*, 966 F.2d 552, 555 (10th Cir. 1992); *see Dock v. Latimer*, 729 F.2d 1287, 1290 (10th Cir. 1984) (noting that although a state may choose to implement a parole system, "it has no duty to do so"). We have also emphasized that "there simply is no constitutional guarantee that all executive

11

decisionmaking must comply with standards that assure error-free determinations. This is especially true with respect to the . . . administrative decision to grant parole release." *Dock*, 729 F.2d at 1290 (citations omitted).

Our approach is bolstered by *California Department of Corrections v. Morales*, 514 U.S. 499 (1995)—a case Mr. Maynard mistakenly finds beneficial to *his* viewpoint—where, as here, a statutory amendment permitted a parole board to defer hearings for up to three years. The Supreme Court determined that the amended statute did not violate the Ex Post Facto Clause, noting that it altered the *method* "[r]ather than changing the sentencing *range* applicable to covered crimes." *Morales*, 514 U.S. at 507–08 (emphasis added). "Respondent nonetheless urges us to hold that the *Ex Post Facto* Clause forbids any legislative change that has any conceivable risk of affecting a prisoner's punishment," the Court observed, "[but] [o]ur cases have never accepted this expansive view of the *Ex Post Facto* Clause, and we will not endorse it here." *Id.* at 508. We reach the same conclusion in Mr. Maynard's case.

Because we agree with the district court's conclusion that Mr. Maynard failed to state a constitutional violation under the Ex Post Facto Clause, we affirm the dismissal of that portion of Mr. Maynard's complaint.

**2**

Mr. Maynard has also brought a claim for relief grounded in Title II of the ADA. To withstand dismissal on such a claim, "the plaintiff must allege that '(1)

12

[he] is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability.'" *Cohon ex rel. Bass v. N.M. Dep't of Health*, 646 F.3d 717, 725 (10th Cir. 2011) (quoting *Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1193 (10th Cir. 2007)). Mr. Maynard at least arguably satisfies the first requirement through his assertion of mental illness. His success on the second requirement is less clear—i.e., a parole hearing, though certainly a "benefit," is not one to which he is entitled at a time of his choosing. Regardless, Mr. Maynard fails this test because he cannot link his disability to the denial of this ostensible benefit; he has not alleged that he was denied a personal appearance before the Board *because of* his mental-health issues.

On appeal, Mr. Maynard advances only two arguments that we could conceivably construe as implicating the "by-reason-of-a-disability" requirement of an ADA claim. He first contends that Defendants overlooked his mental illness when assigning him to a specific prison yard. Second, he argues that with a personal appearance before the Board "he could have shown that he should not have been released" from a mental-health facility at some point predating the crime for which he is now incarcerated. Aplt. Combined Br. at 9. The import (or even relevance) of these arguments is far from pellucid. However, as best we can tell, neither comes close to satisfying Mr. Maynard's burden to show that he did

13

not receive the relief he seeks (i.e., a parole hearing) *because of* a qualifying disability. In sum, we conclude that the district court did not err in dismissing Mr. Maynard's ADA claim.

## 3

Mr. Maynard's third claim for relief is that Defendants' enforcement of § 332.7 constitutes a conspiracy to violate his constitutional rights. His failure to argue this claim on appeal suggests that he has abandoned this argument. Though we need not address affirmatively abandoned theories, *see Taylor v. Roswell Indep. Sch. Dist.*, 713 F.3d 25, 33 n.5 (10th Cir. 2013), it is clear that Mr. Maynard's prior conspiracy averments lack traction. In order to state an actionable § 1983 conspiracy claim, a plaintiff "must prove both the existence of a conspiracy and the deprivation of a constitutional right." *Thompson v. City of Lawrence*, 58 F.3d 1511, 1517 (10th Cir. 1995). Our agreement with the district court's finding of no constitutional violation leads ineluctably to the conclusion that Mr. Maynard's § 1983 conspiracy claim is not viable. The district court correctly dismissed this claim, and we affirm its decision.

## 4

We have concluded that the district court properly dismissed Mr. Maynard's civil-rights complaint under § 1915A. However, we do not believe the appropriate disposition of the matter was a dismissal without prejudice. *See* R. at 88 (Report & Recommendation, filed Sept. 24, 2013) ("recommend[ing] that

14

Plaintiff's complaint be dismissed without prejudice on screening"); *id.* at 136 (Order, filed Oct. 10, 2013) ("dismiss[ing] Maynard's complaint without prejudice" (capitalization altered)).  All of the claims asserted in Mr. Maynard's complaint have been adjudicated on the merits.  Moreover, Mr. Maynard was denied leave to amend when he sought to demonstrate why he purportedly had a protected liberty interest in personally appearing before the Board.  The district court expressly stated its view that "under extant case law . . . the proposed amendment would be futile."  *Id.* at 150 (Order Den. Mot. to Amend, filed Oct. 16, 2013).

Consequently, though we affirm the district court's dismissal of Mr. Maynard's complaint, we find no basis for its entry of a without-prejudice dismissal.  We therefore remand to the district court for the limited purpose of amending the judgment to reflect a *with*-prejudice dismissal.

## C

Finally, we note that Mr. Maynard's request for a COA is not properly before us.  A COA *is* necessary when a litigant wishes to appeal from (as relevant here) "the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court."  28 U.S.C. § 2253(c)(1)(A); *see Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003) ("Before an appeal may be entertained, a prisoner *who was denied habeas relief* in the district court must first seek and obtain a COA." (emphasis added)).  Because Mr.

15

Maynard's case is not a habeas proceeding, it is not subject to the same COA constraints.  In other words, no COA is necessary for the determination of this appeal.

## III

We **AFFIRM** the district court's order dismissing Mr. Maynard's complaint and **REMAND** the case only for the district court to enter a Rule 58 judgment dismissing the suit *with* prejudice.  We **DISMISS** Mr. Maynard's application for a COA.


Entered for the Court


JEROME A. HOLMES
Circuit Judge

16